PETER SZANTO *949-887-2369*
11 Shore Pine
Newport Beach CA 92657

# United States District Court
## in and for the District of Oregon
1000 SW Third Ave, Portland ORE 97204

| | |
|---|---|
| Peter SZANTO<br><br>**APPELLANT, PLAINTIFF**<br><br>**vs.**<br><br>Szanto Family Defendants,<br>JPMorgan Chase Bank,<br>Bank of America, et al<br><br>**APPELLEES, DEFENDANTS**<br><br><br>**\*\*\* *ORAL ARGUMENT IS*__<br>__*REQUESTED* \*\*\*\*\***<br><br><br><br>**Hon. Judge Simon** | **# 3:18-cv-939 SI**<br><br>**Various Matters from US Bankruptcy**<br>**Court – District of Oregon**<br>**Core Case -16-bk-33185 and**<br>**Related Proceedings**<br><br>**Appellant / Debtor's Notice of**<br>**Motion and Motion for an**<br>**EMERGENCY ORDER Seeking:**<br><br>1) **Preliminary Injunction of ALL**<br>**Further Proceedings in the**<br>**Bankruptcy Court**<br><br>**AND**<br><br>2) **Temporary Restraining of**<br>**ALL Further Proceedings in**<br>**the Bankruptcy Court**<br><br>*++ EXPEDITED CONSIDERATION*<br>*IS REQUESTED ++* |

## 1. Certification in Compliance with Local Rule 7-1(a)

This Court's Motion Practice rule requires pre-motion party conferral, except in instances, as herein, when temporary restraint is sought. That is, debtor / appellee seeks temporary restraint of the Bankruptcy court until this Court can take total control of the administration of debtor's Bankruptcy estate and administration of debtor's entire Bankruptcy. The original Motion to Withdraw the Bankruptcy Reference is incomplete, because it did not address recent events as more full described herein.

As will be described momentarily, debtor, intentionally deprived by the Bankruptcy court of the ability to access legal representation, or at least consultation with counsel, is now far too confused, beyond all ability to comprehend and is bewildered by the entire Bankruptcy process fully to understand or grasp what to do next, so as effectively to protect his rights and interests.

## 2. NOTICE

To the appellees and the U.S. Bankruptcy Court in and for the District of Oregon, please take notice, pursuant to FRCP 65(a), appellant herein does notice, gives notice and serves notice that he is seeking a preliminary injunction and a temporary restraining ORDER as to all further proceedings in this District's Bankruptcy Division.

## 3. GROUNDS

The grounds for this application derive from 28 USC 157(d). 28 USC 157(d) has two parts: mandatory and permissive. The mandatory portion has come before this Court by way of [EXHIBIT A]. Now, additionally, debtor invokes the first sentence of 28 USC 157(d) and asks for emergency relief so as to withdraw the whole of the Bankruptcy based **upon good cause which will be shown by proof**.

For the reasons which will now be explained, the entire of debtor's Bankruptcy case now proceeding before Judge McKittrick has become woefully biased such that appellant is deprived of **all** possibility of any future fair hearings. Even debtor's ability to present **evidence** such that they it be reviewed <u>objectively</u> and without a <u>pre-ordained</u> outcome, in **all** instances, has entirely become impossible; all to debtor's immediate detriment and potentially to irreparable injury.

**<u>The essential reason that this request for immediate restraint comes before this Court is that the Bankruptcy Court has scheduled a hearing regarding contempt as to debtor for August 23, 2018. [EXHIBIT B].</u>**

### *a. Nature of the Emergency*

The nature of the emergency situation which requires immediate relief in the form of a temporary injunction and immediate restraint is that:

**If the contempt hearing goes forward in the Bankruptcy Court, debtor will likely lose and be found in contempt. Thereafter, all of debtor's credibility in this Court will be reduced to zero, thus effectively deciding the outcome of all matters now before this Court and thus rendering this Court's power ineffective successfully to decide the matters herein, due to the intense negative effect of a contempt decision.**

Based on the intense bias which Judge McKittrick has developed against debtor, the outcome of the contempt hearing is already known to an absolute certainty; debtor will lose!! Debtor has already asked for additional time to obtain direct evidence which would bolster his contentions, evidence and proof [EXHIBIT C]. That motion was denied on 8/14/18. [EXHIBIT D].

Thus, the (8-23-2018) threatened event which necessitates emergency action is the contempt hearing . which debtor knows will have an adverse outcome. And which thereafter will unfavorably impact and most unsympathetically brunt every attempt by debtor to rehabilitate his credibility so as finally to emerge from Bankruptcy.

**Upon these grounds the immediate threatened event which needs restraint is the contempt hearing of 8-23-2018.**

**The irreparable harm which will certainly will be the outcome of that hearing is that debtor will be found in contempt. Thereafter, for all time, debtor's credibility, trustworthiness, perceived character and standing before this Court, and every other court in which he appears, will be that of a litigant who is mistrusted, not respected and disbelieved as to all matters**. Adverse outcomes to all and everything which debtor advocates would thereafter be assured.

These are the potential harms and very negative future outcomes which debtor seeks to enjoin, such that they be reviewed by an impartial judge in this Court.

Debtor's goal is an impartial hearing regarding his Bankruptcy, before an unbiased judicial officer, such a hearing can no longer occur in the Bankruptcy Division. For that reason, before debtor's standing before this Court is impaired by any adverse outcome in the Bankruptcy court, debtor seeks EMERGENCY relief.

### 4. Fundamental Harms and Irreparable Injuries From Which Appellant / Debtor Seeks Relief

Four of appellant / debtor's matters are before this Court: 1) 28 USC 154(d), second sentence, mandatory withdrawal of the Bankruptcy Reference, 2) appeal of the decision regarding the family dispute, 3) appeal of the decision regarding JPMorgan-Chase Bank and 4) appeal of the decision regarding Bank of America. At the time the

[EXHIBIT A] withdrawal motion was filed, debtor sought relief based on the mandatory provisions of 28 USC 157(d).

Now, however, the Bankruptcy court has demonstrated concrete and tangible hostility towards debtor, which debtor contends allow him to invoke the first sentence provision of 28 USC 157(d): <u>withdrawing the Bankruptcy reference for good cause</u>. The good cause being the continuing demonstration of the Bankruptcy court's hostility . and hence impossibility of debtor receiving a fair or impartial hearing regarding the matters now before that Bankruptcy court.

The good cause upon which debtor relies, is the fact that hearings before Judge McKittrick have been neither impartial nor fair, because of intense, articulated suspicion regarding debtor, which constrains objective assessment of the facts and evidence.

The Supreme Court has settled that fundamentally fair judicial process requires a hearing before a judge with no actual bias or interest in the outcome of any particular case before her or him. *Bracy v. Gramley* (1997) 520 U.S. 899 accord *Withrow v. Larkin* (1975) 421 U.S. 35 accord *Aetna Life Ins. Co. v. Lavoie* (1986) 475 U.S. 813 accord *Tumey v. Ohio* (1927) 273 U.S. 510). %[T]o perform its high function in the best way ‡justice must satisfy the appearance of justice¬ *Schweiker v. McClure* (1982) 456 U.S. 188 accord *J.E.B. v. Alabama,* (1994) 511 U.S. 127.

Debtor contends that very good cause exists for withdrawal of the Bankruptcy reference because the Bankruptcy court is no longer impartial, and is highly biased towards, debtor.

### ***a. Timeliness***

The imminence of the threatened contempt hearing set for 8-23-2018, became certain only on 8-14-18 when that Bankruptcy court denied debtor's ability to secure evidence properly to demonstrate and exculpate his innocence of the allegation of

failing to turn over estate assets. [EXHIBIT D]. Debtor is acting with all due speed to immediately, as practical, present this request for relief in this Court.

Pursuant to Local Rule LR 2100-3(c)(1) this application is being filed as debtor's first motion in this Court.

## b. Extreme Urgency to Restrain Threatened Action

### 1. Essential History of this Bankruptcy through 8-20-2018

This Bankruptcy began as an individual Chapter 11 reorganization in August 2016. The U.S. Trustee alleged that debtor had not been complete in listing his assets. Debtor's defenses, among others, were that he had no control, possession or dominion over a testamentary trust managed by his wife and children. Debtor also defended by offering evidence that his wife (after 40 years of business partnerships and marriage under the community property laws of California) had her own independent ideas of what assets actually belonging individually to debtor. Debtor also clearly stated that his obligations of spousal support precluded his unilaterally deciding his wife's claims while the couple were (at that time and are continuing) the dissolution of their marriage.

Judge McKittrick was un-persuaded by debtor's arguments and the Bankruptcy was converted to a Chapter 7 liquidation in November 2017. Approximately $1.3 million of debtor's stocks, bonds, corporate preferred shares and bank accounts were seized by the Trustee and are now in his possession and total control. The Trustee also seized approximately $350,000 belonging to debtor's wife and children; and an action is pending to make that money part of debtor's Bankruptcy estate.

In January 2018, the Trustee accused debtor of having Singapore or Australia bank accounts. The truth was that certain bank transactions relating to Singapore or Australia currency swaps, futures and trading were denominated on bank statements as

"global transfers," giving the erroneous impression that money was transferred outside the USA. Debtor investigated. To debtor's surprise some money belonging to him had been transferred without his knowledge or action to Australia.

Debtor, without any order to do so, based solely on his desire to be compliant with the turnover of assets to the Trustee order, immediately arranged that money ($81,384) be tendered to the Trustee. [EXHIBIT C, pp. A1-A3]. Debtor was unaware of transfer of this money (by automatic trading programs he employed); but alerted to that fact immediately undertook, and did deliver that money to the Trustee.

Only **7 months** later, without any contact (between the Trustee and debtor) as to the subject in the interim, did the Trustee begin new allegations regarding money not turned over to the Bankruptcy estate. [EXHIBIT B]. Debtor responded [EXHIBIT E]. And this is the matter to be heard on August 23, 2018.

As debtor's request for additional time [EXHIBIT C] and response [EXHIBIT E] aver, debtor has done all he could to assure the Trustee that there are no monies belonging to him in Singapore or Australia. Debtor has further offered to conduct more personal investigation by going to those countries to investigate.

Debtor still believes personal investigation is the correct approach, because bank privacy laws constrain and limit the amount of information which will be released to anyone who is not the actual person whose financial affairs are being discussed.

### 2. Immediate and Irreparable Harm and Damage to Occur on 8-23-2018

Debtor never imagined the extent to which innuendo and implication have had such an immense effect on Judge McKittrick's attitudes towards him. Debtor concedes that the matters demonstrated in the November 2017 conversion motion showed defects in debtor's reporting. Thereafter debtor took immediate steps to rehabilitate reporting and to make certain that what was stated was truthful and segregated out his wife's property.

Debtor was, and is still, hopeful that he will soon emerge from Bankruptcy rehabilitated, with all debts paid and in full appreciation of the second chance for financial success he has been given.

As enumerated in debtor's declaration there are a multitude of demonstrations of bias and potential unfairness by Judge McKittrick which now make the likelihood of any positive outcome for debtor impossible.

This was further demonstrated when debtor attempted to recuse Judge McKitrick [EXHIBIT F]. Rather than allow another judicial officer to examine the situation, Judge McKittrick denied the recusal motion himself [EXHIBIT G].

A close reading of Judge McKittrick's, **UNVERIFIED STATEMENTS**, articulate a self-confidence which overwhelms objectivity (IE, the purpose of 28 USC 144 is to make certain that the recusal analysis is not hampered by a judge's own vanity). Also, while the rule of *Liteky v. United States*, (1994) 510 U.S. 540, makes decisions in a case an improper basis for recusal, that rule does not reach the issue, as herein, of what is to be done when a judicial officer **forces decisions** and outcomes to be "what he wants them to be." That is, to make the case come out the way he wants it to. *Liteky* also does not consider a judicial officer who compounds improper decision metrics, by continuing, as here, without let-up, adverse decisions against one party based solely on scorn and hatred.

Debtor contends that it is Judge Mc Kittrick's lack of objectivity which is now hampered by an acquired prejudice towards debtor which is the essential good cause for withdrawing Judge McKittrick's further ability to participate in this Bankruptcy.

**On these facts of the Bankruptcy court's lack of impartiality, objectivity and bias, the immediate threatened event which needs restraint is the contempt hearing of 8-23-2018 [EXHIBIT B].**

**The irreparable harm of which debtor is fearful is that the outcome of that hearing will be that debtor is found in contempt. Then, for all time, debtor's credibility, trustworthiness, perceived character and standing before this Court, and every other court in which he appears, will be reduced to that of a litigant who is mistrusted, not respected and disbelieved as to all matters**. Thereafter adverse outcomes to everything which debtor advocates would be assured.

## 5. MEMORANDUM

The United States Supreme Court's essential interpretation of injunctions is applicable to this case: to prevent irreparable harm and to preserve this Court's ability to render a meaningful decision when all of the facts are fully developed. *Rondeau v. Mosinee Paper Corp.* (1975) 422 U.S. 49 accord *Canal Authority v. Callaway* (1974) 489 F.2d 567.

Here, debtor has explained his fearfulness of the impact of a contempt citation against him. The irreparability of the harm of never again being perceived as credible debtor describes is precisely what case law understands as <u>injury and harm for which there is no adequate monetary compensation</u>. *Glasco v. Hills* (1977) 558 F.2d 179. In other words, once debtor's credibility is besmirched and labeled with a contempt citation, he will never be believed again, in this Court or anywhere else.

Furthermore, the test for grant of an injunction is the gravity of the harm to the petitioning party versus inconsiderable and non-existent injury to the contra party. *Ohio Oil v. Conway* (1929) 49 S.Ct. 256. Here, debtor would be deprived of all further believability in this case as well as all cases in which he may ever participate. On the other hand, there is no harm to the Bankruptcy court or the Trustee to wait while the issues are more fully developed in this Court.

Thus, the balance of the equities weigh in favor of allowing the entire of the Bankruptcy case to proceed further in this Court for a more thorough and unbiased examination and resolution.

### *a. This is Also an Application for a Writ of Prohibition*

Debtor has considered the fact the because the relief he seeks is from the District Court to the Bankruptcy Court, that the correct remedy may be a Writ of Prohibition.

However, in the event that debtor has sought the wrong relief, this Court has general equitable powers to grant injunctive relief so as to make more effective any available remedy provided by law. *Bateman v. Ford Motor Co.,* (1962) 302 F.2d 63. That is, if debtor has articulated the wrong method to enjoin the Bankruptcy court's actions, this Court has the power to provide and grant that remedy which the facts allow.

This Federal Court has broad power to restrain acts which are of the same type or class as the court finds may occur, unless enjoined or which may be fairly anticipated. *Hillsborough Inv. Corp. v. Securities and Exchange Commission*, (1960) 276 F.2d 665. In other words, if debtor has articulated his fears correctly, then this Court is empowered to act regardless of debtor's inarticulate prayer for relief in naming that relief.

A similar holding states that a Federal Court issuing an injunction has the inherent power of equity to make that injunction effective so as to prevent the frustration of the affirmative relief requested. *Lester v. Parker*, (C.A.9 (Cal.) 1956) 235 F.2d 787, Debtor seeks relief from a threatened action he has articulated, regardless of the name of the relief by which this Court may grant relief.

## 6. Declaration of Peter Szanto

1. My names is Peter Szanto, I am the appellant / debtor / petitioner herein.

2. This is my truthful declaration regarding the necessity for an order of restraint of proceedings regarding this matter in the Bankruptcy court.

3. I began this case Bankruptcy in August 2016, believing that I could successfully represent myself in my Chapter 11 reorganization.

4. As the months passed, I realized I was over-matched by the counsel opposing me.

5. One strategy used against me by the creditors and adversary proceeding defendants has been simultaneously to file several lengthy and complex motions against me.

6. Because of the Bankruptcy court's short 2 week response time (and my lack of the electronic filing privilege, which effectively reduces my time to respond by four days to allow for mailings), I quickly found myself unable to continue work- as to my occupation -- so as to file responses promptly.

7. As matters got out-of-control, Judge McKittrick would not stay proceedings when I prayed time to seek Bankruptcy counsel.

8. My efforts to obtain counsel (starting in July 2017, a year into my Chapter 11 reorganization) were very difficult.

9. For the most part, Portland attorneys simply did not want to enter a case where the judge had already formed an opinion and where the case had likely been mis-handled by me.

10. I spoke with at least 20 Portland Bankruptcy specialists.

11. The closest I was able to come to securing counsel was making an agreement with attorney Thomas Stilley who was willing to commence the case in exchange for $100,000 (as a starting retainer). However, I was on my own as to securing a stay until Judge McKittrick approved Mr. Stilley's entry into the case.

12. Judge McKittrick was un-persuaded to allow a stay and Mr. Stilley was not willing to begin representation by seeking a stay without compensation.

13. During the November 2017 trial regarding conversion, as I endured 10 hours of examination by the U.S. Trustee and many of the creditors' counsel, I repeatedly asked for breaks so that I could at least telephone non-Oregon attorneys with whom I am acquainted for assistance.

14. Judge McKittrick denied all of these requests.

15. Likewise during that conversion trial, I repeatedly asked for and was denied counsel to assist me during the time I was being examined as a witness.

16. After conversion of my case to Chapter 7, I have repeatedly asked for funds from my Bankruptcy estate to secure counsel, but Judge McKittrick has denied my every request.

17. Based on this concrete and continuing fact of not allowing me counsel, I believe Judge McKittrick seeks to make certain that I am forced to be even more unprepared and unable properly to pursue this Bankruptcy.

18. I believe a compelling reason to withdraw the Bankruptcy reference is to allow me opportunity to secure counsel so that I am not further disadvantaged in this action.

19. Another compelling reason to enjoin Bankruptcy court proceedings is that any question regarding funds on deposit at a bank in Singapore or Australia should be handled by direct inquiry at those banks in Singapore or Australia.

20. Considering all banks efforts to maintain security, it is wrong to believe that any Singapore or Australian bank would provide information by telephone or computer without absolute certainty of the person to whom information is being released.

21. To that end of determining exactly what may be transpiring debtor regarding **alleged** Singapore or Australia bank accounts, I believe direct investigation is prudent and will serve to resolve matters far more expeditiously than the Trustees speculations about matters of which even I am not certain.

22. The issue regarding potential Singapore or Australia bank accounts revolves around Singapore or Australia currency trading which I know to a certainty and contend occurred automatically after I no longer had access to my United States bank and brokerage accounts.

23. Certain computer programs which I developed driven by econometric modeling went offline when the Trustee barred my access to my bank and brokerage accounts.

24. Thereafter, transactions occurred without any action from me, because certain parameters for trade initiation occurred.

25. One parameter was an instruction set to buy Singapore and Australian dollars when certain United States securities declined by certain amounts.

26. I believed at the time I when set-up these programs that the Singapore or Australia currency transactions would occur in the United States.

27. I still believe transactions occurred in the United States, but as soon as I was alerted that money belonging to me was in Australia, I immediately delivered it to my Bankruptcy estate. And confirmed *via* telephone that there was no money belonging to me in Singapore.

28. To reiterate, if there is any doubt as to this issue, I am prepared to investigate it by a personal trip to Singapore and Australia.

29. My contentions regarding Judge McKittrick's decisions against me, derive not merely from the fact that I contend many decisions have been in error (<u>which I am pursuing as required, by the appeals herein</u>), but because many determinations have been made without considering the evidence I have presented and without completely evaluating testimony I have given.

30. Thus, my contentions regarding bias contend, among other things that Judge McKittrick's interpretations rely on incomplete analysis of facts, evidence and law which I have presented and which were denied admission as evidence.

31. In other words, Judge McKittrick likely looks at my papers (however briefly) and merely presumes that because I am not a lawyer, that my materials and briefing have no merit; and then puts my pleadings to the side without any consideration at all!!

32. In January 2018, after a month of being in Chapter 7, I was without money and unable to work because of the demands of the Trustee for disclosures and records and efforts to calm my wife regarding the destitution nightmare into which we had fallen.

33. Susan Szanto, my wife was constantly raging at me because she believed that it was my fault that **<u>her</u>** assets were seized without notice and without any opportunity for her to object.

34. I filed papers with Judge McKittrick which revealed the fact that a highly praised psychiatrist had diagnosed me as suicidal. [EXHIBIT H, pp A-C].

35. Judge McKittrick simply had no mercy for my terrible medical crisis.

36. It is axiomatic that American law has always been tempered with mercy, alas in Judge McKittrick's court, there is no mercy.

37. Now, with opportunity for Judge Simon to take consideration of the matters, by complete withdrawal of the Bankruptcy reference, I am hopeful that matters will proceed more rationally as to completion of my Bankruptcy relief.

I declare under penalty or perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

## 7. Conclusion

For the emergency situation explained here, which threatens irreparable harm, debtor prays that this Court immediately stay proceedings in the Bankruptcy Court until the exceptional good cause for complete withdrawal of the Bankruptcy reference is decided.

Respectfully,

Dated 8-21-2018 **/s/** _signed electronically_   Peter Szanto

## **Proof of Service**

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the within action. My business address is PO Box 14894, Irvine CA 92623. On the date indicated below, I personally served the within: **Emergency Motion** by e-mail to contra parties at:

nhenderson@portlaw.com

Bank of America's Portland counsel, Mr. Laurick, by email to:

**jlaurick@kilmerlaw.com** and **tparcell@kilmerlaw.com**

and by 1st Class Mail, in a sealed envelope with postage prepaid to:

1) JPMorgan Chase Bank's Portland Counsel:

Tim Cunningham at Davis Wright Tremaine
1300 SW Fifth Avenue, Suite 2400, Portland, OR 97201

2) United States Bankruptcy Court
1001 SW Fifth Avenue # 700, Portland OR 97204

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 8-21-2018 __/s/ signed electronically_____

PETER SZANTO *949-887-2369*
11 Shore Pine
Newport Beach CA 92657

US BANKRUPTCY
DISTRICT OF OREGON

2018 MAY -1 AM 11: 31

$181.00
PAID DOCKETED



# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

**In Re Peter Szanto**

**Debtor**

======================

Peter Szanto, Plaintiff

**vs.**

Evye Szanto, et al,

Defendants

# Adversarial # 16-ap-3114

## core case:16–bk-33185-pcm7

**Plaintiff's Notice of Motion and Motion Seeking Bankruptcy Judge's Recommendation for Withdrawal of District Court Referral to Bankruptcy Division for Further Proceedings in the United States District Court**

## *(This Application Does Not Waive California District Court's Jurisdiction over this Matter)*

**$181 US Postal Money Order is attached hereto.**

16-bk-33185          Withdraw Reference – pg. 1

## 1. Plaintiff's Certification Relating to Pre-filing Conferral

## (Certification Pursuant to LBR 7007-1(a))

Plaintiff telephoned Adversarial Proceeding defendants' counsel Mr. Henderson on 3-20-2018 to discuss the matters presented herein. The call went to voice mail. To Mr. Henderson's voice mail, plaintiff requested a return call, to discuss the matters herein.

As of the signing of the instant paper, debtor has received no further communication from Mr. Henderson regarding this application.

Thus, pursuant to rule, debtor has diligently sought conferral so as to resolve the situation, but has been unsuccessful in that regard. Very specifically, after 41 days of waiting to discuss the significant matters herein; the opposition simply could not be bothered with communicating with plaintiff.

I certify under penalty of perjury under the laws of the United States, that foregoing is true and correct. Signed at Lido CA.

DATED 4-30-2018 ____/s/_____ Peter Szanto

16-bk-33185          Withdraw Reference – pg. 2

## 2. Introduction

May it please this Honorable Bankruptcy Court, comes now debtor, Peter Szanto, praying that this Court recommend to the U.S. District Court in and for the District of Oregon that the Bankruptcy Referral in this adversarial proceeding be withdrawn such that the matters enumerated below may proceed in the U.S. District Court.

Debtor's contention is that the Bankruptcy reference has already ended and that a parallel case is already proceeding in the California U.S. District Court. This present motion seeks merely to ratify that fact such that: 1) plaintiff need not further be hampered by proceeding in two separate courts upon the same issues and 2) such that party Susan Szanto is not adversely affected by any decision in this Court.

The Oregon District Court's Bankruptcy reference to this Court derives from the US District Court in Oregon's Local Rule 2100-1(a). The referral of the Oregon District Court need be withdrawn prior to bringing a change of venue application to transfer and consolidate proceedings in California.

Plaintiff's argument is that defendants, with this Court's approval, commenced **unnecessary proceedings** in the California District Court. That process unilaterally destroyed the Bankruptcy Referral because:

16-bk-33185          Withdraw Reference – pg. 3

1) it proceeded in the District Court rather than the Bankruptcy Court and 2) defendants' actions were solely for the purpose of obtaining costs and fees based on false and fraudulent never-served notice to Susan Szanto[1] – actions which need be punished as attorney abuse of process by the California District Court wherein these events occured.[2]

1. *The first issue here is that the avowed purpose of taking Susan Szanto's deposition regarding Victor Szanto's assault upon Susan could have been accomplished at any time in the California Superior Court, where that action is proceeding with merely a 1st class mail Notice of Deposition. However, as this Court has hopefully realized, defendants' **custom and habit** is to fabricate and intentionally falsify discovery events so that they can garner attorney's fees. (This occurred in the present case when plaintiff was not served with the initial discovery requests and defendants counsel was able to convince this Court of actual service.) Similarly, defendants parlayed theatrics on this Court regarding Susan Szanto not appearing for her deposition, when, in fact, Susan was never served. These theatrics garnered defendants immense solicitude from this Court, because this Court had already become biased against plaintiff – and so it was easy, a real cinch, to be biased against Susan Szanto as well!*

2. *Defendants have asked the California District Court for $40,758 of costs and fees [EXHIBIT A, p.2]. Susan Szanto has responded and asked that the District Court punish defendants counsel for abuse of process and falsification of the entire issue of personal service. Susan Szanto contends that it is defendants' modus operandi to falsify and unnecessarily to complicate discovery matters (as with Requests for Denials, 2-Unlicensed court reporters and bizarre conversations about meta data in this Court) **solely to gain unfair advantages and score unjustified fees based on falsified pleadings regarding discovery**.*

16-bk-33185          Withdraw Reference – pg. 4

As will be more full explained momentarily, debtor contends that Susan Szanto's joinder as a plaintiff in the instant action is one principal reason necessitating the District Court's full and complete assertion of jurisdiction over this case. Alternately there will need to be one, or more, duplicated proceedings in California for Susan Szanto alone.

Additionally, the Oregon Bankruptcy Court has totally ceased to be **objective** in its decision making. This has created a situation wherein **debtor Peter Szanto's positions are no longer afforded ANY due process or impartial consideration**, because the Bankruptcy Court has long ago decided that whatever debtor Szanto advocates is wrong, a lie or unsupported by law (or is merely another terrible aspect of Szanto's horrible and wretched demeanor.).

### 3. **Essential Facts**

This adversarial proceeding, must, **as a matter of law**, be adjudicated in the District Court. This is true because of the absolute, exceptionally essential and fundamental mandate of 28 U.S.C. § 157(d) which requires that when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" the matters **must** revert to the District Court.

Events, **not of debtor's making**, now require reversion, because non-Title 11 matters affecting interstate commerce have become very significant to the outcome of this action, as described *infra*.

### *a. Analysis of Governing Legal Principles*

Congress vested all original jurisdiction over bankruptcy cases in the United States District Court. 28 U.S.C. § 1334(a). Congress further provided that the District Court could refer all cases in bankruptcy and any and all proceedings arising under, in, or related to cases in bankruptcy, to the Bankruptcy Court. 28 U.S.C. § 157(a). Accordingly, until and unless the reference of jurisdiction to the Bankruptcy Court is withdrawn by an Order of the District Court, all jurisdiction over a bankruptcy matter resides with the Bankruptcy Court. Herewith and hereby, plaintiff explains the various reasons and the good causes why this Court should recommend that the District court withdraw its referral so as affirmatively to assert jurisdiction over all of this adversarial proceeding.

### *b. Statutory Rule Provisions*
### *With Respect to Withdrawal of Reference*

28 U.S.C. § 157(d) provides as follows:

"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

As set forth in 28 U.S.C. § 157(d), the District Court has the authority to withdraw the entire bankruptcy case, or any part thereof, or any proceeding in the bankruptcy case or part thereof. The District Court can exercise its authority to withdraw cases or proceedings on its own motion or on timely motion of any party, for cause shown.

**28 U.S.C. § 157(d) also provides for what must be called mandatory withdrawal of the reference.** The mandatory requirement of the rule arises pursuant to the second sentence of § 157(d), the District Court **shall**, on timely motion of a party, withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both the Bankruptcy Code and other federal laws regulating organizations or activities affecting interstate commerce.

The absolutely mandatory nature of the rule is made clear by the Congress' use of the essential and imperative word **"shall."**

### c. Local Rule Grounds and Timeliness

The Oregon District Court's Local Rule 2100-4 allows withdrawal of the Bankruptcy Court reference upon recommendation of a Bankruptcy judge. This local rule is neither governed, nor predicated, upon any finite timeframe, presumably so that --- <u>as demonstrated by the events herein</u> — when events arise during the course of proceedings which necessitate withdrawal of the reference, this Court may make a decision at a time, and

16-bk-33185          Withdraw Reference – pg. 7

**as in the present circumstances**, when ultra clearly and very necessarily demanded by the facts. This application for withdrawal of the reference is directed to the Bankruptcy Court based upon new occurrences in this adversarial proceeding.

The newly occurring events which have affected this adversarial proceedings arise from the following events: 1) Defendants in this case commenced a companion proceeding in the US District Court in California [EXHIBIT B]. 2) That proceeding was a motion in violation of FRCP 11 by which this Court allowed defendants' counsel Mr. Henderson to fabricate false service in an effort to secure Susan Szanto's incarceration for contempt.[3] 3) Susan Szanto filed Notice of Joinder in the adversarial proceeding in this Court (Docket 334) and in the District Court [EXHIBIT D]; 4) Susan Szanto has filed a claim in the instant core bankruptcy regarding real property she owns as part of her community property estate with debtor [EXHIBIT C].

---

3. *In actuality, Susan Szanto's deposition could have been had at any time under the California state proceeding by means of a 1st class letter containing a Notice of Deposition.* **_Mr. Henderson's issuance of a subpoena was merely barratry masquerading as theatrics seeking purposefully and improperly to hornswoggle this Court into believing there was no alternate manner in which to secure Susan Szanto's testimony._** *Additionally, at the deposition Mr. Henderson spent several hours questioning Susan Szanto about her bank accounts, her finances and her participation in the Yankee Trust Corp. That inquiry, as more fully explained below, by affecting interstate commerce (IE, the Massachusetts Corp. that is the Yankee Trust, as well Susan Szanto's various interstate commercial bank relationships), the mandatory aspects of 28 U.S.C. § 157(d) have now been intentionally invoked and become part of the 16-3114 action. SEE BELOW FOR BROADER APPLICATION OF THESE FACTS TO THE LAW!!*

16-bk-33185          Withdraw Reference – pg. 8

5) When the adversarial proceeding regarding improper acts in Nevada's courts was filed, it was not known that the true, actual cause of action related entirely to defendants Victor, Anthony and Evye Szanto improperly and impermissibly influencing judicial officers in Nevada so as to impair Peter Szanto's Bankruptcy relief entitlement (which, *de facto* and *de jure*) clearly and necessarily affects Susan Szanto's creditor's claims. Now, that the defendants' actions in Nevada are sought to become part of this action, the matter should properly be in the District Court, because it relates to a dispute between citizens of different states regarding bribery, or other influence or corruption of state judicial officers so as to impair and (attempt to confound) the with wholly Federal Bankruptcy proceeding and thereby defeat Peter and Susan Szanto's civil rights.

## 4. <u>Memorandum</u>

### *<u>a. Defendants' Nevada Actions Against Plaintiff and Usurped Money and Property in Nevada</u>*

Debtor is asking the Court to examine the true nature and current status of the instant adversarial proceeding commenced by plaintiff. The goal is for this Court to recognize that the mandate of 28 U.S.C. § 157(d) requires that adjudication of this case must occur in the District Court.

Defendants undertook two nefarious and improper strategies to affect the proceedings herein.

16-bk-33185          Withdraw Reference – pg. 9

Defendants' first strategy was to approach two judges of the Courts of Nevada purposefully to render decisions in favor of defendants which intentionally thwarted Nevada law and Peter Szanto's ability to pursue bankruptcy relief and likewise impaired Peter Szanto's ability to conduct discovery of any type in Nevada.[4]

Defendants' efforts to influence judicial officials, which are likely bribery of courts and judicial officials in Nevada, is a clear aspect of why this action must now be mandatorily returned to the District Court. Also, the potential for bribery of judicial officials creates very ample likelihood that defendants counsel facilitated, suggested, and suborned that bribery.

These facts now require adjudication of "title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." (28 U.S.C. § 157(d)). The non-title 11 law which is implicated is 42 USC § 1983: Peter Szanto was sought to be deprived of complete Bankruptcy relief by Nevada judicial officials granting unwarranted relief

---

*4. The Court will recall that defendants' strategy was to enjoin debtor's ability to conduct litigation. There is ample and convincing evidence that this strategy was undertaken by Victor and Evye Szanto at the behest of -- and upon the instruction of -- their counsel. The intent was to stymie not just the adversarial proceeding, but debtor's entire bankruptcy by defendants creating TWO additional cases in Nevada. Defendants success in that endeavor contributed to debtor's still incomplete discovery in the adversarial proceeding herein.*

16-bk-33185          Withdraw Reference – pg. 10

from defendants fabricated violence claims which directly constrained Peter Szanto's 11 USC § 362 stay as well ability to conduct discovery in Nevada to gather evidence for the instant adversarial proceeding.

Furthermore, the grant of sham violence relief in Nevada clearly impaired Peter Szanto's ability to go to Nevada so as properly to conduct discovery of non-party witnesses who would testify to defendants' activities in abrogation of Peter Szanto's rights to his own property.[5]

The organizations affected thereby were Peter Szanto's estate in Bankruptcy as well as the various operating companies which Peter Szanto used in the creation of income. Susan Szanto's many interstate constraints relate to the Yankee Trust Corp (a Massachusetts Corp. of which she is director and shareholder since 2014) the interstate activities of which have been affected by defendants and their counsel. Additionally, another organization affected in its interstate endeavors is the <u>Community Property Estate of Peter and Susan Szanto</u> which is severally impaired to obtain complete discovery regarding the California U.S. District Court proceeding as well as obtaining essential Nevada discovery in both actions initiated by the defendants in that state court proceeding.

---

*5. Another reason defendants obtained their sham violence order in Nevada is so that Peter Szanto's Nevada discovery efforts and Nevada evidence acquisition efforts in Nevada could potentially be labeled stalking.*

16-bk-33185          Withdraw Reference – pg. 11

Further interstate commerce affected by the sham restraining order in Nevada has been Peter Szanto's ability to continue his various business activities in Nevada related to his farrier and equine health businesses. Further impact on interstate commerce has been Peter Szanto's inability to obtain real property and commercial documents relating to defendants' Nevada business activities undertaken with Peter and Susan Szanto's money and property (IE, being able freely to travel in Nevada to the Nevada Secretary of State's Office and various county recorder and assessor's offices to secure further evidentiary materials).[6]

All these matters, and others not listed here, need be adjudicated in the District Court, because the complexity and nature of harm which the defendants have caused Susan and Peter Szanto is outside the bounds of solely Chapter 11 adjudication and is interstate commercial activity.

### *b. Action Regarding Victor Szanto, et al.*

Since the Szanto family disputes began in 2005, Susan Szanto has done nothing to favor either her husband (Peter) or her brother-in-law (Victor). Susan has sought consistently to make whatever efforts she possibly could to help resolve family rancor and to end family strife.

_____

*6. Plaintiff's ability to travel in Nevada was impaired, because the restraining order against plaintiff is still active in Nevada.*

16-bk-33185          Withdraw Reference – pg. 12

Susan's only active participation in family matters had been, through intense personal prayer, beseeching the all-mighty to bring peace to family quarrels.

Only after being assaulted by Victor Szanto and his pistol, did Susan taken the very prudent step of obtaining a restraining ORDER against Victor Szanto. <u>Susan Szanto requested no other relief from than protection</u>. Having obtained protection, Susan was not motivated either to join the action or to seek vengeance (E.G., a firearm arrest and / or immediate suspension of Victor's medical license).

However, as the facts demonstrate, nothing but vindictiveness, spite and retribution are upon the minds of the defendants and their various despicably amoral counsel.

For these reasons, Susan Szanto joined in Peter Szanto's claims against the defendants. [EXHIBIT D]. Importantly, Susan Szanto joined the action in the California District Court forum selected by the defendants [IE, defendants' choice of the District Court rather than the Bankruptcy Court was unilateral rejection of the Bankruptcy reference by the defendants.]

Now that this matter is proceeding in the California District Court, this Court should not compound complexities herein by re-establishing its own duplicate jurisdiction **which the defendants themselves vacated by pursuing in the District Court a deposition which should have been taken in state court without the need for personal service**.

16-bk-33185          Withdraw Reference – pg. 13

### 1. Susan Szanto's Claims

*Black's Law Dictionary* 5th Edition explains that an organization includes: corporations, business trusts, estates, trusts, partnerships, or any **association of two or more persons having a joint or common interest or any other legal or commercial entity**.

Peter Szanto and Susan Szanto have had a multitude of common and joint and community interests both legal and commercial, during the past 40 years. The most significant of these is the organization which is their **Marital Community Property Estate**. That Community Property estate has lost a significant portion of its wealth and assets due to fraudulent transfers and other ultra despicable and nefarious actions by the defendants.

**Peter and Susan Szanto's Marital Community Property Estate's interstate commercial activities have been affected by the defendants' fraudulent transfers which have deprived the Community Property Estate of its assets, money and property.**

Upon this basis, mandatory return of this action to the District Court is necessary, because the **Marital Community Property Estate's interstate** commercial activities have been intentionally adversely impaired.

16-bk-33185                  Withdraw Reference – pg. 14

## 2.  The Yankee Trust is a Massachusetts Corp. Conducting Interstate Business

There are multiple reasons why Victor Szanto, *et als*, actions have affected the Yankee Trust's interstate activities. First, during the deposition of Susan Szanto, Mr. Henderson made the Yankee Trust his number one topic of concern and questioning. Many questions regarding the Yankee Trust Corp., a Massachusetts Corp., interstate activities have been intentionally dragged into the 16-3114 adversarial action by the defendants. Thus, as a matter of law, "title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" (28 USC 157) **must** now be considered in the final resolution of the adversarial proceeding, because defendants themselves "opened the door" regarding this interstate commercial activity.

### 3. Interstate Affect on Susan and Peter Szanto Marital Community

One of the claims in the 16-3114 complaint is that Victor Szanto, *et al.*, made fraudulent **interstate** transfers money and property belonging to Peter Szanto from California to Nevada. By joinder to this action, Susan Szanto now makes claim against upon that usurped and expropriated property as her own community property asset.

The Title 11, as well as non-Title 11 claims regarding interstate activities of that organization known as the Peter and Susan Szanto Marital Community must necessarily be adjudicated in the United States  District Court to obtain complete relief and recovery from the **Interstate Fraudulent Transfers** carried out by the defendants. (28 USC 157)

16-bk-33185          Withdraw Reference – pg. 15

### d. Legal Analysis / This Court Also Lacks Jurisdiction

**Neither Susan Szanto (individually) nor Susan Szanto (as an owner of ½ of the un-divisible Community Property Estate with Peter Szanto in the action proceeding in California's Family Court) nor Susan Szanto (as plaintiff in the California Central District proceeding versus Victor Szanto, _et al_) nor the Yankee Trust Corp are debtors in any Bankruptcy action!!** Therefore, this Court's jurisdiction cannot extend to Susan Szanto or the entities in which she is an active actor and an active participant in the actions enumerated above.

This Court's jurisdiction is separate and distinct from that of the US District Court, the Nevada state court and the California Family Court AND is limited to Bankruptcy. Neither Susan Szanto (in any of her various permutations) nor the Yankee Trust Corp. are in Bankruptcy and this Court cannot extend its limited Bankruptcy jurisdiction to destroy, raze, impair nor negate the rights of entities outside the bounds of its jurisdiction. _U.S. v. Huckabee_ (1986) 783 F.2d 1546.

This honorable Bankruptcy court lacks any and all jurisdiction over controversies involving claims wherein a non-debtor or her property (IE, Susan Szanto) or controversies wherein the non-bankrupt has no liability to creditors or their interests. _Nixon v. Michaels_, (1930) 38 F.2d 420 accord _In re Burton Coal Co._, (1942) 126 F.2d 447 accord _In re Lubliner & Trinz Theatres_ (1938) 100 F.2d 646.

16-bk-33185          Withdraw Reference – pg. 16

In this plea for withdrawal of the Bankruptcy reference, this Court should recommend withdrawal of this adversarial proceedings, so that Susan Szanto's rights will not be impaired and because any decision without consideration of Susan Szanto's rights will necessitate that the entire proceeding will need to be re-litigated in its entirety in the proper US District Court, in diversity, in any event!!!!

### *e. Permissive Aspects of 28 USC 157(d)*

28 USC 157(d) also allows for withdrawal of the Bankruptcy reference **"for cause shown."**

Very good cause for withdrawal of the reference is also that the presiding judge has become **woefully, irreparably and un-reasonably biased, prejudiced and unfair** towards Peter Szanto and his positions.

This has been demonstrated in a multitude of decisions made by Judge McKittrick.

Some, (this list is not exhaustive) of these extremely egregious demonstrations of bias are:

a) Judge McKittrick's believes that all attorney statements and argument are holy-writ. Judge McKittrick has, all to Peter Szanto's detriment, embraced attorney statements and argument as the equivalent of sworn testimony irrespective of the fact that said statements were mere hearsay and factually un-proveable. Attorneys opposing Peter Szanto have thrived on these circumstances to make ever increasing outrageous statements to Peter Szanto's detriment.

16-bk-33185          Withdraw Reference – pg. 17

b) Judge McKittrick has allowed hearsay testimony by persons who had no possible way of knowing actual facts other than by being **told** to what to testify. This occurred when Chase's professional witness was allowed to testify to facts not within her knowledge and also when a person anxious to keep his job testified for the Department of Justice regarding listening to a tape recording of Szanto.

c) Judge McKittrick has suspended all discovery limitations for Victor Szanto, *et al*, while at the same time ending discovery for Peter Szanto 8 months ago. This has been to Szanto's immense detriment because Szanto can not even obtain responses to subpoenas.

d) Judge McKittrick has not allowed Peter Szanto to have the electronic filing privilege, even though every other court in which Peter Szanto is proceeding allows him to have that ECF filing ability.

e) Judge McKittrick **has not enforced** discovery rules against Bank of America and so Peter Szanto has been unable to prepare his Motion for Summary Judgment, **because he has been deprived of the fundamental right to discovery and discovery enforcement by Judge McKittrick.**

f) The first discovery set allegedly propounded by Mr. Henderson was never served. The due date of that discovery coincided with Victor Szanto's assault on Susan Szanto. Irrespective that lateness was necessitated by Peter Szanto taking affirmative action to mitigate further possibility of attack, Judge McKittrick punished Peter Szanto's lateness (even though prevention of Susan and Jakkob Szanto's deaths were the sole reasons for that lateness.)

g) Judge McKittrick comments regularly on his dislike of Peter Szanto's demeanor. Peter Szanto's demeanor is simply that of an old man over which Szanto has limited control (Szanto's demeanor could not even be fixed by cosmetic surgery). Indeed, Judge McKittrick's animosity is nothing other than irrational projection of what a beautiful and idealized demeanor ought to be. Indeed, it is not but appearance discrimination against the un-beautiful.

h) Judge McKittrick has often commented in-the-abstract as to Peter Szanto's credibility without identifying any actual instances. This pattern of judicial conduct merely allows attorneys opposing Szanto to make unreasonable and immaterial attacks (in the guise of credibility) as jingoistic slurs which are unrelated to anything of relevance save to create more animosity towards Peter Szanto.

i) Numerous times Judge McKittrick has denied Peter Szanto's right to the assistance of counsel. Judge McKittrick has stated that Szanto could obtain counsel, but would not stay proceedings while Szanto secured counsel. Now, every attorney in Portland knows that if they should dare to assist Szanto, their own credibility and demeanors before Judge McKittrick will be irredeemably destroyed for all other cases.

j) Judge McKittrick would not enforce Peter Szanto's subpoena directed to Victor Szanto, *et al*. This sends a message to defendants that they simply do not need to comply with any process issued by Peter Szanto, because Judge McKittrick will not enforce even the basic rules necessary for Peter Szanto to prevail.

k) At the 11-28-17 hearing, materials were proffered by Mr. Kukso prior to being reviewed by the Judge in New Jersey. Judge McKittrick allowed these materials into evidence. After the hearing, Judge McKittrick's clerk, Ms Smith, forcibly took those papers away from Szanto. Ms Smith would not have acted other than on Judge McKittrick's order; that is, Judge McKittrick intentionally made certain that materials proffered at a hearing were unavailable for review.

l) Victor Szanto admitted at his deposition that he had "boxes boxes and boxes" of relevant materials. Mr. Henderson stated that the materials were not relevant at all. Judge McKittrick accepted Mr. Henderson's testimony as more true. And so important evidence in this action was spoliated away from necessary consideration and proper adjudication.

Thus, the fundamental good cause for withdrawal of this adversarial proceedings from the Bankruptcy court is Judge McKittrick's

16-bk-33185          Withdraw Reference – pg. 19

continuing lack of fairness toward Peter Szanto, intense bias against Peter Szanto and clear unwillingness to consider Peter Szanto's points of law. The lack of impartiality manifests itself by creating a situation wherein Peter Szanto is deprived of all possibility of fair, proper, equal and reasonable adjudication of the adversarial matters now before this Court.

## 5. Declaration of Peter Szanto

Declaration is a separate companion document.

## 6. Conclusion

For the reasons stated herein, debtor prays that this Court review the facts of the adversarial proceedings, as presented herein, and recommend that this adversarial proceeding proceed in the District Court.

1$^{\underline{st}}$, judicial bias can never be part of any litigation. Every party to an action is entitled to "due process right to a fair trial before an unbiased judge." *Citizens United v. FEC* (2010) 558 U.S. 310, 360. Also, a "fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison* (1955) 349 U.S. 133, 136.

2$^{\underline{nd}}$, the mandatory part of 28 USC 157 requires transfer whenever "title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" must be adjudicated so as to achieve complete and final relief. Here, the various organizations which comprise Peter and Susan Szanto's private and business lives must be

adjudicated under Title 11, as well as FRCP 11, 42 USC 1983 and other non-Bankruptcy laws.

Respectfully,

Dated 4-30/2018 _____ Peter Szanto

## **Proof of Service**

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the within action. My business address is PO Box 14894, Irvine CA 92623. On the date indicated below, I personally served the within:

## **Motion**

by e-mail to Mr. Olsen and Mr. Henderson at:

nhenderson@portlaw.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Portland OR.

Dated 4-27-2018 /s/ *Maquisha Reynolds*

16-bk-33185          Withdraw Reference – pg. 21

**Jeremy G. Tolchin, SBN #239714**
jtolchin@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0509
Facsimile: (503) 417-0459

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>PETER SZANTO,<br><br>       Debtor. | No. 8:17-MC-00019-DOC-DFM |
| PETER SZANTO,<br><br>       Plaintiffs,<br><br>       v.<br><br>EVYE SZANTO, VICTOR SZANTO, NICOLE SZANTO, KIMBERLY SZANTO, MARIETTE SZANTO, ANTHONY SZANTO, AUSTIN BELL and BARBARA SZANTO ALEXANDER,<br><br>       Defendants. | Oregon Bankruptcy Case No. 16-33185-pcm11<br><br><br>Oregon Bankruptcy Adv. Proc. No. 16-03114-PCM<br><br>DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM IN SUPPORT |

### I.     MOTION

*A1*

Defendants Evye Szanto, Victor Szanto, Nicole Szanto, Kimberly Szanto, Mariette

Szanto, Anthony Szanto, Austin Bell and Barbara Szanto Alexander (collectively referred to as

PAGE 1  - DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM IN SUPPORT
{00036662:1}

"Defendants") move the court for an order granting an award of attorneys' fees and costs pursuant to this court's Order on Plaintiff's Motion for Contempt (the "Order") [Dkt. No. 95]. In support of his motion, Defendants rely on their Memorandum in Support, the declaration of Nicholas J. Henderson (the "Henderson Decl."), the declaration of Michael L. Fell (the "Fell Decl.") and the documents in the court's record.

## II.   MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

Defendants submit this Memorandum in Support of their Motion for Attorneys' Fees in the sum of $36,135.76, and costs in the sum of $4,621.80 for a total request of $40,757.56.

Attached as Exhibit A is a detailed ledger of Defendants' attorney fees for the law firm of Motschenbacher & Blattner LLP that have been incurred during Defendants' protracted effort to depose Susan Szanto – a difficult and expensive process driven solely by Mrs. Szanto's contemptuous conduct. The attorney fees on Exhibit A total $30,576.00. Attached as Exhibit B is a detailed ledger of Plaintiff's costs that have been incurred during Defendants' attempts to depose Susan Szanto. The costs on Exhibit B total $4,621.80. Attached as Exhibit C are the attorney fees billed by attorney Michael L. Fell and his law firm. The fees on Exhibit C total $5,559.76.

Plaintiff's requested fee rates are within, and below, the range of fees customarily charged by attorneys in comparable areas of practice at comparable Portland law firms. (Henderson Decl. ¶ 5.) This Court should use the prevailing market rate in the community to determine an appropriate award of attorney fees. See *Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001).

Facts relating to the experience, reputation, and ability of counsel for the defendant are set forth in the Declaration of Nicholas J. Henderson in Support of Defendants' Motion for Attorneys' Fees and Costs (Henderson Decl. ¶¶ 6-9), and the Declaration of Michael L. Fell in Support of Defendants' Application for Attorney's Fees filed with this Memorandum. (Fell Decl., ¶¶ 6-7).

**A2**

PAGE 2 - DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM IN SUPPORT
{00036662:1}

Defendants readily acknowledge this fee petition is higher than a typical fee petition related to a discovery dispute. However, there are many factors which increased Defendants' fees and costs. Susan Szanto evaded of service, resulting in the need to hire a private investigator to locate her. She refused to acknowledge the fact that she was served with subpoenas, and she refused to attend numerous depositions for which had prepared. As a result of Mrs. Szanto's dishonesty and proclamation that she was 500 miles away at the time she was served with a subpoena at her place of business, Defendants' counsel was compelled to subpoena Mrs. Szanto's employer to produce time records proving Mrs. Szanto was at work on the date and time in question. Not unexpectedly, Mrs. Szanto's husband questioned the authenticity of the records produced. Fully aware of Mr. and Mrs. Szanto's history of fabrications and disingenuous arguments, Defendants' counsel was compelled to assist both its process server and Mrs. Szanto's employer in preparing declarations of sufficient detail and clarity to withstand any such attack. And of course, Defendants' counsel had to prepare two motions (the motion to compel Mrs. Szanto's compliance with subpoenas [Dkt #1] and the subsequent contempt motion [Dkt. #11] following her failure to comply with that Order) before Mrs. Szanto finally relented and agreed to appear for her deposition.

The Court has already ruled that Defendants are entitled to recoup the attorneys' fees and costs incurred compelling Mrs. Szanto to comply with deposition subpoenas. [Dkt. No. 5]. The only material difference since that Order is the amount of fees and costs incurred compelling Mrs. Szanto to comply – fees and costs that were completely avoidable and driven solely by Mrs. Szanto's contemptuous conduct.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /



PAGE 3 - DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM IN SUPPORT
{00036662:1}



## III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court to grant their

Application for Attorney's Fees and Costs in the amount of $40,757.56.  Defendants reserve the

right to supplement this motion with fees and costs incurred subsequent to the date it is filed.

DATED this 22nd day of January, 2018.


MOTSCHENBACHER & BLATTNER LLP


/s/ Nicholas J. Henderson
Nicholas J. Henderson, OSB #074027
Of Attorneys for Plaintiff



PAGE 4  - DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM IN
SUPPORT
{00036662:1}

ACCO,(DFMx),DISCOVERY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division – Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:17–mc–00019–DOC–DFM

Peter Szanto v. Evye Szanto et al
Assigned to: Judge David O. Carter
Referred to: Magistrate Judge Douglas F. McCormick
Case in other court:  USBC District of Oregon,
                      16–33185–pcm11
                      USBC District of Oregon, AD
                      16–03114–PCM
Cause: Civil Miscellaneous Case

Date Filed: 09/22/2017
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

## There are proceedings for case 8:17–mc–00019–DOC–DFM but none satisfy the selection criteria.

EXHIBIT B

Fill in this information to identify the case:

Debtor 1   Peter Szanto

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court     **District of Oregon**

Case number:  16–33185

**FILED**

**U.S. Bankruptcy Court**
**District of Oregon**

2/26/2018

**Charlene M. Hiss, Clerk**

EXHIBIT C

# Official Form 410
# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Szanto, Susan

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Szanto, Susan

Name

11 Shore Pine
Newport Beach CA 92657
NEWPORT COAST, CA 92657

Contact phone _____ 9498872369 _____

Contact email _____

Where should payments to the creditor be sent? (if different)

Name

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                        Proof of Claim                        page 1

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7. How much is the claim?** | $ 3961438.00     **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>1) community estate assets, 2) marital estate assets, 3) community property assets under California Law |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____    EXHIBIT C<br>**Amount of the claim that is secured:** $ _____<br>**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☐ No ☑ Yes. *Check all that apply:* | | **Amount entitled to priority** |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ 3961438.00 |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | | $ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    2/26/2018
                    MM / DD / YYYY

                                                    EXHIBIT C

/s/  Peter Szanto

Signature

Print the name of the person who is completing and signing this claim:

Name          Peter Szanto

              First name    Middle name    Last name

Title

Company       Identify the corporate servicer as the company if the authorized agent is a servicer

Address       11 Shore Pine

              Number   Street
              NEWPORT COAST, CA 92657

              City  State  ZIP Code

Contact phone    9498872369          Email    szanto.pete@gmail.com

FILED

1

2   SUSAN SZANTO *949-720-7005*
    11 Shore Pine
3   Newport Coast CA 92657

2018 JAN 31  PM 2: 13



4

5   ## United States District Court

6   ### in and for the Central District of California

7

EXHIBIT D

8

9   **In Re Peter Szanto,**          **Santa Ana Division**

10  **Debtor and Plaintiff**         **# 17–MC-00019 DOC DFM**

11
    **(in Oregon Bankruptcy Cases**
12
    **16-bk-33185 and 16-ap-3114)**  **Notice of Joinder**
13                                   **of Indispensable Party**
    ===================
14                                   **Susan Szanto**

15

16

17

18

19   May it please the Court:

20
     **DECLARATION of Susan Szanto**
21

22   1.  My name is Susan Szanto; I am over 21 years of age

23   2.  I was previously the non-party whose deposition was sought and whom
         the Court directed to be deposed.
24

25   3.  This is my truthful declaration subsequent to said deposition.

26   17-MC-19              NOTICE  – pg. 1

27

28

ORIGINAL

4. At said deposition of January 18, 2018 my thoughts, recollections and memories were refreshed by the questions asked by the defendants.

5. With great psychological pain and intense emotional sadness, I recollected vividly all of my current, pending and unresolved claims against the defendants herein.

6. During the deposition and the days thereafter, my memories were refreshed by consideration of the questioning by the defendants.

7. I recalled the immense pain and horror the defendants have purposefully inflicted upon me during the previous years.

8. That intense physically pain is continuing now.

9. I personally obtained a copy of the underlying complainant in this matter.

10. I concur in, and support, and affirm all of the claims made in that complaint.   EXHIBIT D

11. Upon that ground, I now join this action with plaintiff against the defendants.

12. I know to an absolute certainty that I am an indispensable party in this matter because complete adjudication of plaintiff's claims is impossible without the adjudication of my same claims against the defendants,

13. Upon that ground, I now join this action with plaintiff against the defendants.

14. Pursuant to FRCP 19 and supported by FRCP 20(a)(1) I also assert:

   (A) my right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences as plaintiff; and

17-MC-19                                           -page 2-

1

2    **(B)** that  the questions of law or fact common in plaintiffs action all arise

3         in the action now already before this Court.

4

5    15. I learned only for the first time on January 18, 2018 that my rights and

6        claims are impaired by the defendants and that I am entitled to relief for

7        defendants' actions against me personally based upon this action which is

8        already before this Court.

                                        EXHIBIT D

9

10

11        I declare under penalty of perjury under the laws of the United States

12   that the foregoing is true and correct. Signed at Santa Ana California.

13

14

15   January 26, 2018 *Susan Szanto* Susan Szanto

16

17

18

19

20

21

22

23

24

25   17-MC-19                  NOTICE  – pg. 3

26

27

28

US BANKRUPTCY COURT
DISTRICT OF OREGON

2018 MAY -1 AM 11: 31

LODGED___RECD___

FILED

# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

| | |
|---|---|
| **In Re Peter Szanto**<br><br>**Debtor** | # Adversarial # 16-ap-3114<br><br>### core case:16–bk-33185-pcm7<br><br>### Debtor's Declaration Supporting Motion RE: Judge McKittrick's Recommendation for Withdrawal of District Court Referral as to Bankruptcy Division Case 16-ap-3114 for Further Proceedings in the United States District Court<br><br>Hon. Judge Peter C. McKittrick, presiding |

## 1. Declaration of Peter Szanto

1. My name is Peter Szanto, I am the plaintiff, debtor herein.

2. This is my truthful declaration regarding the necessity of District Court adjudication in the adversarial proceeding discussed herein.

3. Throughout the 16-3114 adversarial proceeding I have realized that defendants' litigation and discovery strategies involved purposefully misleading this Court as well as the District Court in California.

4. When this case began, I believed Judge McKittrick to be a fair and impartial judge who had the wisdom to recognize that attorneys will do anything and everything to win cases.

5. I believed that Judge McKittrick recognized that attorney abuse and misconduct are endemic in the practice of law.

6. And that attorneys, when confronted by a *pro se* litigant, immediately begin the psychological scam upon the presiding judge of fabricating misdeeds by the *pro se* party irrespective of truth justice or law.

7. This has been demonstrated most emphatically in this action by Mr. Henderson's non-stop testimony in this case.

8. Judge McKittrick is enamored with Mr. Henderson's testimony and simply does not understand that Mr. Henderson would say anything to win this case, irrespective of being honest!!

9. Mr. Hendesron's most despicable mis-directions of the Court have been (this list is not-exhaustive):

9a: Pretending that I was served with the first batch of his discovery when there was no such service.

9b: Knowingly allowing his clients to make two "a civil action is violence motions" in contravention of both 11 USC 362 and Nevada law. There is substantial evidence that Mr. Henderson facilitated and subborned these motions (probably through Mr. Olsen, defendant's California counsel). When I received the first of these motions, I called Mr. Olsen (with whom I have been litigating since 2012). I told Mr. Olsen that I could tell that the spreadsheet included with the motions was his work. Mr. Olsen tacitly admitted my accusation, by simply hanging up on me. (IE, another tacit admission by silence *Course v. Stead* (1800) 4 U.S. 22.

9c: Testifying to this Court that the "boxes and boxes and boxes" (IE. 6 boxes) of material which Victor Szanto represented were damning evidence against Peter Szanto, were just personal notes.

The Court's acceptance of Mr. Henderson's representations was particularly biased against plaintiff, because it is likely that had the Court allowed examination of the 6 boxes, they would have yielded the materials which Victor Szanto had represented as damning

The Court's disregard of this evidence demonstrates clearly that the Court is not concerned with the truth in this action.

9d. Mr. Henderson's theatrics regarding a subpoena to Susan Szanto, as well as the subsequent months of phony service and continuing extensions of discovery, **when, in fact, Susan's deposition could have been secured in the on-going restraint of violence by a Notice of Deposition sent by 1st Class Mail – no personal service necessary.**

9e. Mr. Henderson violating his representations to this Court about the purpose of the deposition of Susan Szanto as having relevance to this case by asking dozens of questions about Susan's Yankee Trust Business and Susan's Bank accounts.

As proof of the fact that the deposition of Susan Szanto was nothing else but an effort to secure discovery sanctions, Mr. Henderson asked absolutely no questions about Victor Szanto's attack on Susan Szanto (which was the avowed purpose of the deposition).

9f. Mr. Henderson has not allowed Susan Szanto to review her deposition in a secure location.

9g. Mr. Henderson failed to respond to plaintiff's subpoena regarding the deposition transcripts in his possession.

10.    Defendants have been very successful in convincing Judge McKittrick of false facts and in their own blatant lies.

11.    Likewise, defendants' counsel often fail properly to serve papers.

12.    Generally, defendants often support their failed service with perjured proofs of service.

13.    Whenever Judge McKittrick is confronted with a situation where he has to decide who is lying, he always presumes Peter Szanto is lying!

14.    Such judicial bias arises from Judge McKittrick's mistaken belief in defendant's counsel's veracity and ethics.

15.    However, proof that defendants readily lie is available in this action and in the case which is proceeding in the California District Court

16.    Failed service in U.S. District Court in California's Central District case 17-cv1660 is evidenced in defendants first 22 papers, none of which were ever served.

17.    The civil cover sheet of that filing (Docket Entry 1-21, p1) also contains the false statement that on 9-22-17 Peter Szanto was a resident of Orange County CA.

18.    On 9-22-17, I was a resident of Oregon.

19.    Thereafter, defendants filed another action in the U.S. District Court in the Central District of California, # 17-mc-00019.

20.    That action's first 22 filings were likewise never served.

21.  Defendants' civil cover sheet in that action also has the false statement that on 9-22-17 Peter Szanto was a resident of Orange County CA.

22.  The evidence of the fact of failed service, as well as false statements does not rely on my statements, but is rather proven by the record itself.

23.  That is, on this occasion the Court is able to examine the record and objectively see that even though it perceives defendants and their counsels as always truthful, that proof of their false statements and failed service is in the record.

24.  In this instance the record is clear that neither I, the plaintiff, nor the party to be deposed were served with the first 22 papers in the California Central District actions, which papers were preliminary to defendants seeking contempt sanctions against the person, Susan Szanto, whom they never served.

25.  **Specifically this is proof of what plaintiff was stating about discovery on him: that defendants use discovery tactics solely to attempt to obtain unfair advantage so as to secure discovery sanctions though failed service.**

26.  In particular, defendants' counsel's manner of deception has been to posit as truth matters about which only their statements are the required proof (no corroboration is ever necessary when Mr. Henderson speaks!!).

27. Furthermore, the Court has relied on its own intense personal belief that all attorneys tell all of the truth all of the time to make the decision that all attorneys opposing plaintiff must be the truth tellers and that Peter Szanto must be the liar.

28. The Court has consistently refused to see that failed service and false statements as defendants' affirmative strategy to obtain discovery sanctions and to win this action through contrived false facts.

29. Rather the Court has presumed plaintiff's complaints of failed service to be just another indicator of plaintiff's lack of credibility.

30. However, there is proof that defendants have engaged in deception.

31. The significance and relevance of these facts to the instant Withdrawal of Reference Motion is that it demonstrates Judge McKittrick's bias against plaintiff regarding truthfulness, when in fact, defendants' truthfulness is being demonstrated to be lacking.

32. This was precisely the same strategy as defendants preying upon the Court's belief in the unshakeable veracity of counsel.

33. A similar charade was played on this Court by defendants demands to take a deposition in California.

34. Defendants right to take a deposition in California Family Court was always available without any subpoena.

35. However, defendants played out the theatrics of failed and phony service simply to make plaintiff appear even less credible.

(IE, the presumption has been embraced by this Court that Susan Szanto failing to appear at a deposition must be plaintiff's fault! or somehow related to some action or act by plaintiff.)

36.  Again the Court did not realize that it was being deceived by perjured proofs of service in another district regarding a deposition which could have been had at any time by way of ordinary mail service of a Notice of Deposition in the Family Court action.

37.  Upon these grounds and many others this Court has developed intense bias against me which makes continuation of the this adversarial proceeding in this Court fore-ordained to have adverse outcomes for me.

38.  I believe to an absolute certainty that the bias I have described here (as well as further bias stemming from the conversion trial's mis-interpretations of banking done by Mrs. Szanto wherein I was a pay-on-death beneficiary as separate accounts of mine) have created a situation where a fair and impartial trial or further proceedings in this Court are **ABSOLUTELY IMPOSSIBLE**.

39.  These matters of which I am complaining are the intense and intentional misleading of this court – and the Court embracing those efforts so as to be willingly misled create the good cause necessary to sustain a 28 USC 157(d) revocation of Bankruptcy referral, because **NO FAIR OR IMPARTIAL HEARING CAN OCCUR IN THIS COURT!!!!** These events are the "cause shown" required in the 1st sentence of 11 USC 157(d), because judicial impartiality is a pre-requisite for any judicial decision.

40.   Impartiality no longer exists in this action.

41.   And the decisions that this Court has made since being fooled regarding my alleged discovery lateness (which was actually just defendants' failed service) have all been to my detriment.

42.   In this Court and the California District Court defendants' efforts have been all to seek the punitive aspects of the discovery rules, but not to obtain admissible evidence.

43.   Defendants' strategy is not one of discovery, but rather of falsely creating opportunities for discovery punishment against the Susan Szanto and myself.

44.   This was also evidenced in that paper the Court mentioned wherein the defendants were referring to themselves as plaintiffs.

45.   The supposition being that defendants merely cut and paste the same demand for sanctions from case to case and merely forgot to change their side on this occasion.

46.   Thus, defendants strategy is contrary to the intent of discovery disclosure rules which are the actual substance of the discovery laws; the goal being trial preparation and not the accumulation of sanctions.

47.   But defendants have successfully changed that goal to that of sanctions and the creation of opposing party prejudice.

48.   Defendants have been very successful in that regard in this case.

49.   The deposition of Susan Szanto did not focus on any matter relevant to the within action. Rather the questions focused on Susan Szanto's finances and her involvement in the Yankee Trust Corp.

50.   For this reason, defendants themselves invoked the mandatory withdrawal of reference aspects of 28 USC 157 by involving the interstate activities of organizations (Yankee Trust being a Massachusetts Corporation) and Susan Szanto's finances being an undivided ½ of the Marital Community Property Estate of Susan and Peter Szanto under California law (which cannot be adjudicated under Oregon's non-community property rules), but rather requiring adjudication under laws other than Title 11 as described in the 11 USC 157(d) withdrawal of reference law.

51.   Another non-title 11 law which requires adjudication is Victor and Evye Szanto and their counsel's improper contact with Nevada judicial officers improperly to affect my Bankruptcy.

52.   Apparently this Court did not grasp the co-incidence between Victor Szanto's threatening Susan Szanto with violence and the due date of plaintiff's discovery.

53.   However, when the facts are looked at objectively, the lateness of plaintiff's discovery can readily be accounted for by the time needed by plaintiff to go to California to protect his spouse and son.

54.   Likewise, the Court "did not get" that Victor and Evye Szanto obtained a Nevada violence order specifically to stymie my efforts to interview Nevadans regarding defendants' financial and business activities which would be admissible evidence in this action.

55.   I believe to an absolute certainty that Judge McKittrick is biased and prejudiced against me in the following ways (this list is non-exhaustive and is limited for the sake of expedience):

a) Judge McKittrick's *modus opernadi* is to believe that all attorney statements and argument are the equivalent of holy-writ. Judge McKittrick has, all to my detriment, embraced attorney statements and argument as the equivalent of sworn testimony irrespective of the fact that said statements were merely hearsay and factually un-proveable. Attorneys opposing me have  thrived on these unfair circumstances to make ever increasingly outrageous statements, all to my detriment.

Hopefully, the Court recalls Mr. Laurick calling me a tar-baby on the record.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

b) Judge McKittrick has allowed hearsay testimony by persons who had no possible way of knowing actual facts other than by being **told** as to what to testify. This occurred when Chase's professional witness was allowed to testify to facts not within her knowledge and also when a person anxious to keep his job testified for the Department of Justice regarding listening to a tape recording of me (or perhaps somebody who he was told was me). But, in fact, listening to a tape recording can never overcome the hearsay exception, because it is not live or actual testimony.

   This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.


c) Judge McKittrick has suspended all discovery limitations for Victor Szanto, *et al*, while at the same time ending discovery for me 9 months ago. This has been to my immense detriment because I can not even obtain responses to subpoenas.

   This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

16-bk-33185          Declaration April-30--2018 – pg. 12

d) Judge McKittrick has not allowed me to have electronic filing privileges, even though every other court in which I am proceeding allows me to have that ECF filing ability.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

e) The first discovery set allegedly propounded by Mr. Henderson was never served. The due date of that discovery coincided with Victor Szanto's assault on Susan Szanto.

1) it is my absolute belief that Mr. Henderson liased and planned the firearm assault on my wife with Victor Szanto solely for the purpose of causing me to be late with discovery. That is, Mr. Henderson, reasoned correctly that if he suborned and facilitated Victor Szanto's attack on my wife, I would rush to her assistance and thereby be tardy on my discovery responses.

2) The same was true with Mr. Henderson's non-statutory and *ultra vires* request for denials. Mr. Henderson reasoned that attempting to respond in the negative to questions which are not statutorily allowed (IE, request for denials are not the statutorily allowed requests for admissions) would take far

16-bk-33185        Declaration April-30--2018 – pg. 13

longer time and be much more difficult to respond than requests for admissions. Thereby creating the possibility of further lateness and more opportunity to request sanctions.

Irrespective of all else, lateness was necessitated by my taking affirmative action to mitigate further possibility of attack on my family by Victor Szanto. Judge McKittrick punished my lateness (even though prevention of Susan and Jakkob Szanto's possible injury or deaths were the sole reasons for that lateness.)

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

f) Judge McKittrick comments regularly on his dislike of my demeanor. My demeanor is simply that of an old man over which I have limited control (My demeanor likely could not even be fixed even by cosmetic surgery; I will never look like a blushing 18 year-old under any circumstances). Indeed, Judge McKittrick's animosity about my demeanor is nothing other than irrational projection of what a beautiful and idealized demeanor ought to be. Indeed, it is merely reprehensible and vile appearance discrimination.

Also, my demeanor is often that of a person in a state of shock
who has to oppose false and misleading statements of those
opposing me.

This is relevant to the withdrawal of reference issue because
it demonstrates good cause to remove this action from a biased
judge.

g) Judge McKittrick has often commented in-the-abstract as to my
credibility without identifying any actual instances. This pattern of
judicial conduct merely allows attorneys opposing me to make
unreasonable and immaterial attacks (in the guise of credibility) as
jingoistic slurs which are unrelated to anything of relevance save to
create more animosity towards me.

This is relevant to the withdrawal of reference issue because
it demonstrates good cause to remove this action from a biased
judge.

h) Numerous times Judge McKittrick has denied me the right to the
assistance of counsel. Judge McKittrick has stated that I could obtain
counsel, but would not stay proceedings while I secured counsel.

16-bk-33185          Declaration April-30--2018 – pg. 15

That is, securing counsel is a time-consuming effort (and every attorney wants payment even before asking the Court for permission to be paid). Without a stay, the time consuming effort of securing counsel would negatively affect my ability to prepare papers for this action on time.

Furthermore, every attorney in Portland now knows that if they should dare to assist me, their own credibility and demeanors before Judge McKittrick will be irredeemably destroyed for all their other cases.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

i) Judge McKittrick would not enforce my subpoena directed to Victor Szanto, *et al*. This sends a message to defendants that they simply do not need **ever** to comply with any process issued by me, because Judge McKittrick will not enforce even the basic rules necessary for me to obtain admissible evidence.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

j) At the 11-28-17 hearing, materials were proffered by Mr. Kukso prior to compliance with the New Jersey judge's ORDER requiring review by that Judge in New Jersey prior to presentation at any other hearing. Judge McKittrick allowed these materials into evidence without the New Jersey judge's review. After the hearing, Judge McKittrick's clerk, Ms Smith, forcibly took those papers away from me. Ms Smith would not have acted other than on Judge McKittrick's order; that is, Judge McKittrick intentionally made certain that materials proffered at a hearing were unavailable for review.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

k) Victor Szanto admitted at his deposition that he had "boxes boxes and boxes" of relevant materials. Mr. Henderson stated that the materials were not relevant at all. **Judge McKittrick accepted Mr. Henderson's testimony as more holy-writ emanating from an attorney who could never-ever lie**. And so important evidence was spoliated away from necessary consideration and proper adjudication in this action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 4-30/2018 __/s/_____ Peter Szanto

# PROOF OF SERVICE

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the with action. My business address is PO Box 4614, Portland OR 97208. On the date indicated below, I personally served the within:

## DECLARATION

a. Internal Revenue Service, PO Box 7346, Philadelphia PA 19101
b. First Service Residential, 15241 Laguna Canyon Rd, Irvine CA 92618
c. JPMorgan Chase Bank, represented by:
                 Cara Richter  c/o Shapiro & Sutherland
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683

d. Bank of America, c/o McCarthy & Holthus
         920 SW 3rd Av., Portland OR 97204
e. Oregon Department of Revenue, 955 Center St., Salem OR 97301
f. Chapter 7 Trustee, Stephen P Arnot, POBox 1963, Lake Oswego OR 97035
         by e-mail to arnotlaw@sbcglobal.net

by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 4-30-2018 _Maquisha Reynolds_ **Maquisha Reynolds**

16-bk-33185            Declaration April-30--2018 – pg. 18



ORIGIN ID:DTHA          (949) 887-2369
SZANTO
SZANTO
P.O.BOX 14894

IRVINE, CA 92623
UNITED STATES US

SHIP DATE: 30APR18
ACTWGT: 0.50 LB
CAD: 112243018/INET3980

BILL SENDER

TO **CLERK-DIST OREGON**
**US BANKRUPTCY COURT PORTLAND**
**1001 SW 5TH AVE #700**
**ROOM 700 @ 1001 SW 5TH AV**
**PORTLAND OR 97204**
(503) 610-0865
INV:                    REF:
PO:                     DEPT:





FedEx
Express

**FedEx**
TRK# 7721 1412 5092
0201

TUE – 01 MAY AA
STANDARD OVERNIGHT

## WS MRIA

97204
OR–US    PDX



#2631660  04/30  552J2/782B/DCA5

Stephen P. Arnot, OSB #070765
WILLIAMS, KASTNER GREENE & MARKLEY
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967
Fax: (503) 222-7261
Attorneys for Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 16-33185-pcm7 |
| PETER SZANTO, | Chapter 7 |
| Debtor. | CHAPTER 7 TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT FOR CONTINUED VIOLATION OF THIS COURT'S ORDER, RESTRICTING DEBTOR'S ACCESS TO FOREIGN ACCOUNTS AND TURNOVER OF ESTATE PROPERTY |

## **MOTION**

Pursuant to 11 USC § 524(a)(4) and 11 USC § 105 and this court's order converting

Debtor's case to chapter 7 entered December 5, 2017 ("Conversion Order") (DKT #278),

Stephen P. Arnot, the Chapter 7 Trustee ("Trustee") moves this court for entry of an order that

(a) finds the debtor in contempt of court for failing to comply with the conversion order requiring

the debtor to turn over funds in his foreign accounts at HSBC Bank Singapore Limited and

HSBC Bank Australia Limited ("Foreign Accounts")[1] and (b) issue an order restricting debtor's

access to the foreign accounts and order the debtor to comply with his statutory obligation under

Section 521(a)(4) and turn over the proceeds in the foreign accounts.[2]

---

[1] The debtor merely needs to sign two forms provided by HSBC to release and turnover the funds in the foreign accounts to the trustee. See Exhibits E and F attached to Trustee's declaration.

[2] The Trustee will domesticate the proposed order in Singapore and Australia at which time HSBC should turn over the funds in the foreign accounts to the trustee.

**Williams, Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 228-7967 • Fax (503) 222-7261

6529231.1

Case 16-33185-pcm7    Doc 533    Filed 07/30/18

## FACTUAL BACKGROUND

During the debtor's Chapter 11, he established accounts with HSBC Bank Singapore and HSBC Bank Australia. On November 30, 2017, this court entered an order restricting defendants' use of the financial accounts at all institutions (See DKT #272). On December 5, 2017, the court entered an order converting the debtor's case to Chapter 7. As part of the conversion order, the court restrained the debtor from use of any property of the bankruptcy estate, including all monies, funds and/or securities held or titled in the name of the debtor or related entities (See DKT #278). The court further held that all financial institutions holding monies in the name of the debtor or related entities shall cooperate with and turn over those funds to the Trustee.

From December 4, 2017 to December 8, 2017 the debtor transferred from his HSBC Bank USA the aggregate sum of $423,904 to HSBC Bank Australia Ltd. and HSBC Bank Singapore Ltd. (See Exhibits A and C.) The Trustee has also located another $199,998 transferred to HSBC Bank Singapore and HSBC Bank Australia on June 2017. (See Exhibit D.) The debtor denies, of course, that he set up any Foreign Accounts. The Trustee's only concern is for the return of the funds and not whether the account was foreign or domestic.

The Trustee filed an action against HSBC Bank USA to turn over the funds held by HSBC Bank USA, HSBC Bank Singapore and HSBC Bank Australia. Defendant HSBC Bank USA has turned over $81,602.09. Defendants have refused to turn over the funds held within the foreign accounts and have asserted that the bankruptcy court lacks personal jurisdiction over the foreign banks. However, HSBC Bank Singapore would turn over the funds if the debtor signed the authorization forms for release of funds to the Trustee.[3]

Defendants will not recognize an order authorizing the Trustee to sign on behalf of the debtor. However, if the Trustee were to obtain an order that restricts the debtor's access to the foreign accounts and directs the debtor to turn over the funds held in the foreign accounts to the

---

[3] The Trustee has provided those forms and requested the debtor sign and return. The debtor has refused to this date. See Exhibits E and F.

CHAPTER 7 TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT FOR CONTINUED VIOLATION OF THIS COURT'S ORDER, RESTRICTING DEBTOR'S ACCESS TO FOREIGN ACCOUNTS AND TURNOVER OF ESTATE PROPERTY

6529231.1

**Williams, Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 228-7967 • Fax (503) 222-7261

Trustee and domesticates the order in Singapore and Australia, the defendants would cooperate with the Trustee.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 11 USC § 157 and 11 USC § 1334. This motion constitutes a core proceeding within 28 USC § 157 as this matter constitutes a request for order compelling debtor to turn over property of the bankruptcy estate, contempt for debtor's continued violation of the conversion order and an injunction to enjoin debtor's access to the foreign accounts.

## RELIEF REQUESTED

The Trustee, pursuant to Section 524 and Section 105 of the Bankruptcy Code and the conversion order, moves this court for entry of an order which (a) finds the debtor in contempt of court for failing to comply with the debtor's statutory duties under Section 521 of the Bankruptcy Code; (b) for entry of an order restricting the debtor from access to the foreign accounts; and (c) for turnover of all funds in the foreign accounts to the Trustee pursuant to the conversion order and his statutory obligation under § 521.

## POINTS AND AUTHORITIES

11 USC § 521(a)(4) provides that if a trustee is serving in the case, the debtor shall surrender to the trustee all property of the estate and any recorded information including books, documents, records and papers relating to property of the estate.

11 USC § 105 provides that the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, including taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

To obtain an order of contempt for violation of an order, the Trustee must prove that the debtor had knowledge of the order and intended the conduct that violated the order. *Zilog v. Corning*, 450 F.3d 996, 1007 (9th Cir. 2006). To recover sanctions for contempt, the Trustee must establish a violation by clear and convincing evidence. *Renwick v. Bennett*, 298 F.3d 1059,

CHAPTER 7 TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE RE
CONTEMPT FOR CONTINUED VIOLATION OF THIS COURT'S ORDER,
RESTRICTING DEBTOR'S ACCESS TO FOREIGN ACCOUNTS AND
TURNOVER OF ESTATE PROPERTY

**Williams, Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 228-7967 • Fax (503) 222-7261

6529231.1

1069 (9th Cir. 2002).  A contempt proceeding in bankruptcy is properly brought by a motion.
*Barrientos v. Wells Fargo*, 633 F.3d 1186, 1191 (9th Cir. 2011); FRBP 9020.

The debtor is well aware of the conversion order entered on December 5, 2017.  The debtor is also well aware of his statutory obligations under Section 521 of the Bankruptcy Code, specifically the debtor's obligation to cooperate and turn over property of the bankruptcy estate to the Chapter 7 Trustee.  See 11 USC § 521(a)(4).

The debtor asserts that he does not have access to the accounts in order to assist the Trustee.  However, access to the accounts is not the issue.  The Trustee has provided to the debtor two forms that the defendants require he sign and upon doing such, the defendants will release the funds in the foreign accounts to the Trustee.  (See Exhibits E and F)

The debtor was not prevented by any party from complying with his statutory obligations under 11 USC § 521 nor this court's order of December 5, 2017.

Most important, this court should issue a further order restricting the debtor's access to the foreign accounts.  If the debtor were to gain access to the foreign accounts and remove those funds, the Trustee and the estate could lose in excess of $350,000 that would benefit the unsecured creditors. There is no burden on the debtor if the court enters such an order, including a turnover order, since the debtor has a statutory obligation to turn over the funds in the foreign accounts to the Trustee.

## CONCLUSION

The debtor has intentionally violated this court's order and failed to cooperate with the Trustee by simply executing two documents required to release the funds held in the overseas accounts.   This court should enter an order to show cause re contempt of court for debtor's continued violation of the is court's order and for entry of an injunction restraining the debtor's

/ / /

/ / /

/ / /

CHAPTER 7 TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT FOR CONTINUED VIOLATION OF THIS COURT'S ORDER, RESTRICTING DEBTOR'S ACCESS TO FOREIGN ACCOUNTS AND TURNOVER OF ESTATE PROPERTY

**Williams, Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 228-7967 • Fax (503) 222-7261

6529231.1

Case 16-33185-pcm7    Doc 533    Filed 07/30/18

access to the accounts held by defendants, including a turnover order, and for such other relief as the court deems just and proper.

DATED this 30th day of July, 2018.

/s/ Stephen P. Arnot
Stephen P. Arnot, OSB #070765
Attorneys for Trustee
WILLIAMS, KASTNER GREENE & MARKLEY
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967
Fax: (503) 222-7261
sarnot@williamskastner.com

Page 5 -   CHAPTER 7 TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE RE
           CONTEMPT FOR CONTINUED VIOLATION OF THIS COURT'S ORDER,
           RESTRICTING DEBTOR'S ACCESS TO FOREIGN ACCOUNTS AND
           TURNOVER OF ESTATE PROPERTY

6529231.1

**Williams, Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201
Telephone: (503) 228-7967 • Fax (503) 222-7261

Case 16-33185-pcm7     Doc 533     Filed 07/30/18

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing CHAPTER 7 TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT FOR CONTINUED VIOLATION OF THIS COURT'S ORDER, RESTRICTING DEBTOR'S ACCESS TO FOREIGN ACCOUNTS AND TURNOVER OF ESTATE PROPERTY on the following attorneys by the method indicated below on the 30th day of July, 2018:

Peter Szanto
11 Shore Pine
Newport Beach, CA 92657

Email: szanto.pete@gmail.com

_____✓____ Via First Class Mail
_____ Via Federal Express
_____ Via Facsimile
_____ Via Hand-Delivery
____✓____ Via E-Mail
____✓____ Via Electronic Service by the court's E-filing system at the party's email address as recorded on the date of serve in the E-filing system.


/s/ Stephen P. Arnot
Stephen P. Arnot, OSB #070765
*Attorneys for Chapter 7 Trustee*

**Williams Kastner Greene & Markley**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Telephone: (503) 228-7967 • Fax (503) 222-7261

6529231.1

PETER SZANTO 949-887-2369
11 Shore Pine
Newport Beach CA 92657

US BANKRUPTCY COURT
DISTRICT OF OREGON

2018 AUG -7  AM 10: 16

# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

| | |
|---|---|
| **In Re Peter Szanto**<br><br><br>**Debtor** | **# 16 –bk-33185 pcm7**<br><br>**Debtor's Notice of Motion and Motion to Extend the Date of Hearing Regarding Contempt**<br><br><br>Hon. Judge Peter C. McKittrick, presiding |

## 1. Plaintiff's Certification Relating to Pre-filing Conferral (Certification Pursuant to LBR 7007-1(a))

Debtor telephoned Chapter 7 Trustee, Mr. Steve Arnot, on 8-3rd - 2018 to discuss the matters presented herein. The calls went to voice mail and debtor requested a return call, ASAP.

That same day Mr. Arnot telephoned debtor and the parties had a lengthy conversation without any final conclusion.

16-bk-33185          Motion 8-3-2018 – pg. 1

Thus, pursuant to rule, debtor has sought conferral, conferral did occur, but there has been no success in agreeing to resolution.

I certify under penalty of perjury under the laws of the United States, that foregoing is true and correct. Signed at Irvine CA.

DATED 8-3-2018 ____/s/_____ Peter Szanto

## 2. <u>Essential Facts</u>

When this Chapter 7 proceeding began in November 2017, debtor was, immediately and without notice, deprived of access to his brokerage and bank accounts.

Through phone calls from various customer service agents at said banks and brokerage companies, alerting debtor to events such as stock exercises, stock assignments and bank overdrafts, debtor realized that his proprietary software which he had developed and put in place to control and administer his accounts was now "off line." Without total and complete co-ordination of the various financial tools which debtor managed and utilized, the ability to utilize the management and supervision from the various integrated applications and software driver tools, unexpected consequences began to occur. Prime among these were unnecessary **<u>trading losses, unplanned withdrawals and unauthorized transfers.</u>**

Debtor's efforts to contact Trustee Arnot regarding this situation as it "spun out of control" (throughout December 2017) were unsuccessful.[1]

When Mr. Arnot returned in January 2018, Arnot raised "fire and brimstone" with debtor regarding alleged transfers of money to Australia and Singapore.

Debtor was surprised by Arnot's allegation, because all of debtor's understanding was that the foreign currency accounts (used to trade and hedge currencies versus stock positions debtor had established at HSBC Bank in the United States) were monies which always stayed in the United States **at all times**.

Since Mr. Arnot contacted HSBC in the United States, debtor has been treated like a pariah by HSBC Bank – and no one at HSBC has returned any of debtor's phone calls and requests for information about his accounts. Likewise, as the Motion to Remove Mr. Arnot demonstrated, HSBC believes itself to be immune from compliance with the subpoena rules and requirements of FRCP 45 when propounded by debtor.

---

*1. One recurring theme in Mr. Arnot's conversations with debtor is that debtor is not co-operative. Debtor's immense co-operation and unending transparency will be discussed momentarily. However, in further effort to make demonstration of even greater efforts to be co-operative, debtor makes the suggestion that the Chapter 7 Trustee should delegate his duties and responsibilities to others whenever he is away and cannot be readily contacted (specifically persons who have authority to stem the dissipation and unnecessary waste, as in the instant situation, in a debtor's estate).*

16-bk-33185          Motion 8-3-2018 – pg. 3

### a. More and Greater Showing of Debtor's Diligence and Efforts

On **January 2nd or 3rd, 2018**, debtor was accused by Mr. Arnot of not complying with this Court's turnover orders regarding money at HSBC Bank in the United States. Debtor immediately made extraordinary efforts to contact HSBC Bank in the United States, but was thwarted at every step. No one at HSBC, after the issuance of the conversion order, has ever bothered to return even one of debtor's requests for communication. HSBC Bank has simply disregarded every effort by debtor to know various important matters regarding his accounts and to obtain the records thereof (so as to resolve all misunderstanding regarding debtor's finances).

Immediately, debtor, based solely and exclusively on the many representations debtor received from Mr. Arnot – that money had been transferred to Australia and Singapore took the further extraordinary steps of contacting the HSBC Bank organizations in those two countries.[2]

This meant contacting HSBC Bank officers in Australia and Singapore who had absolutely no familiarity with any of debtor's accounts so as to clear up the various confusions regarding the matter relating to debtor's foreign currency trading (which debtor believed at all times were occurring in the United States though debtor's United States accounts).

---

*2. Phone calls to these countries are not cheap and becoming clear about time differences to reach persons during business hours is also not easy.*

16-bk-33185          Motion 8-3-2018 – pg. 4

Debtor discovered to his shock and surprise, that money which had always been represented to him as being located in the United States was actually in Australia. Within a few days, debtor arranged for the return of these monies to HSBC in the United States [EXHIBIT A]. These documents [EXHIBIT A] were immediately provided to Mr. Arnot.

**No money was ever in debtor's possession and the entire set of transactions was entirely for the benefit of debtor's estate.**

**AND TO BE COMPLIANT WITH THE RULES THAT ALL MONEY BE UNDER THE CONTROL OF THE TRUSTEE!!!!!**

Debtor undertook and completed all this work in full, complete and total co-operation with his duties, with neither instruction nor participation from Mr. Arnot and in the belief that it would further his efforts quickly to emerge from Bankruptcy.

**Debtor was apprised of the situation on January 2nd or 3rd, 2018 and the money was back in the United States by January 10, 2018 [EXHIBIT A].**

Debtor was told by the various persons he contacted in Australia that all of the money which had been transferred from HSBC Bank in the United States was now entirely and totally returned to to United States. This occurred prior to January 10, 2018.

16-bk-33185          Motion 8-3-2018 – pg. 5

As for HSBC in Singapore (**again in the January 2-10th, 2018 time period**). After a multitude of phone calls to a multitude of bank officers at HSBC Singapore, debtor was told that all monies from the United States had been returned. However, debtor was told that because all of the communications were telephonic, debtor was not entitled to any written advice of these facts.

Again, all of these events regarding debtor expending his efforts to ensure return of money to ~~the~~ Trustee Arnot **occurred in the first 10 days of January 2018**.

## b. Irrespective of All of Debtor's Efforts, Mr. Arnot Continues to Rely on Representations of Persons Whose Tasks are Merely Clerical

After, the above described events, Mr. Arnot did not communicate further with debtor regarding debtor's accounts at HSBC Bank. Nor did Mr. Arnot question debtor's efforts at management and supervision of debtor's accounts at HSBC Bank to be compliant with conversion. Nor was there any communication regarding debtor's expending time and effort to obtain return of all monies to Trustee Arnot and debtor's Bankruptcy estate.

Mr. Arnot has relied only on hearsay statements from persons whose job function at HSBC Bank is to respond to subpoenas. And **NOT** person's whose responsibilities include administrative banking functions, accounting tasks or management of client relationship responsibilities.

16-bk-33185        Motion 8-3-2018 – pg. 6

Mr. Arnot's continuing disbelief of debtor, fueled and aggrandized by multitudes of statements of disbelief regarding debtor from many other persons, **overpowered all of Mr. Arnot's objective analysis of the issues** related to money transfers which Arnot sought to assess.

After January 10, 2018, Mr. Arnot told debtor of no further issue regarding **ANY** HSBC Bank matter. Mr. Arnot told debtor of no further action in **ANY** HSBC Bank matter, made no further requests of debtor regarding the HSBC Bank matter and did not apprise debtor of anything that was occurring regarding **ANY** HSBC Bank matter.

Nonetheless, on April 10, 2018, Mr. Arnot filed an adversarial action in this Court (18-ap-3029) against HSBC Bank.

**Regardless of any other issue in this case, by the filing of an action against HSBC, Mr. Arnot represented to this Court that he knew and that he understood that debtor did not have any control over any moneys which might be at HSBC BANK of any type! That is, why would Arnot sue HSBC if he thouht debtor controlled any money?**

To reiterate, debtor did everything in his power to secure return of estate money to the trustee **by January 10, 2018**. For three months, Mr. Arnot apparently had no thoughts of this matter. On April 10, 2018, Mr. Arnot decided that more money could be obtained and so sued HSBC. **Again confirming that debtor controlled nothing at HSBC Bank!!**

Then, from April 10, 2018 until July 9, 2018, the matter was not prosecuted, but instead was stipulated to be stayed.

**Now, apparently because Mr. Arnot is unable to secure any statement from HSBC (in either Australia or Singapore) that debtor has no money at HSBC Bank, the burden of proving (THE NEGATIVE) that debtor has neither dominion nor control over any money at HSBC Bank in Singapore or Australia falls on Peter Szanto.**

Of course, the most significant consideration is this: Mr. Arnot has controlled all of debtor's estate for 10 months now. All instructions Mr. Arnot has given to HSBC Bank have been respected and carried out. There is nothing debtor can do regarding HSBC Bank in Australia or Singapore, nothing which debtor can control at HSBC Bank and nothing over which debtor continues to have any authority at HSBC Bank in the United States.

Upon these basis, Mr. Arnot is seeking that the Court find debtor in contempt regarding matters **regarding which debtor has absolutely no control, no dominion, no authority, no possession and no influence**.

To reiterate, Mr. Arnot, armed with valid court orders has been able to seize approximately $1.3 million of debtor's assets. Mr. Arnot now seeks to hold debtor in contempt **upon Arnot's own and solitary mere speculation** that in some manner, somehow, debtor still has funds which belong to the Bankruptcy estate.

16-bk-33185          Motion 8-3-2018 – pg. 8

Now, after 10 months of attempting to secure money from HSBC, which the record shows that Mr. Arnot has successfully recovered, the effort has now returned to seeking to exert further punative efforts against debtor – not merely to recover money – but to make certain that debtor is made to look ridiculous and contemptuous before Judge McKittrick.

Again, the purpose is not to secure money, but rather to drive one final nail in debtor's coffin to make certain that every shred of credibility is destroyed so as to make certain that debtor will not be able to recover any of his money whatsoever.

### c. Debtor's Further Efforts and Prayer to Stay Contempt Hearing

In debtor's further and continuing efforts **to be co-operative, to be transparent and to be of assistance**, debtor articulates his proposal to resolve all of the issues related to Mr. Arnot's concerns regarding debtor's failure to turn over estate assets through further effort.

First, based on efforts in the first week of January 2018, during which $81,383.99 [EXHIBIT A] was returned to HSBC Bank and handed over to Mr. Arnot, debtor contends that there is proof that no estate assets are at HSBC Bank in Australia. Therefore, debtor contends there is no issue at all regarding HSBC Australia (please see debtor's declaration for further proof of facts).

16-bk-33185          Motion 8-3-2018 – pg. 9

Second, based on debtor's conversations with persons at HSBC Bank in Singapore, debtor is anxious to ascertain for himself what has occurred in Singapore regarding any of his Bankruptcy estate's assets.

Based on many conversations with Banking officers at HSBC Bank Singapore, debtor realizes no information of any sort will be provided to him unless debtor makes a personal appearance at HSBC Bank Singapore's offices in Singapore.

To accomplish this objective, debtor will personally travel to Singapore to obtain information about any account or money which may be at HSBC Bank in Singapore.[3] Thereafter, debtor will provide Trustee Arnot with complete proof of the status of funds in Singapore.

Additionally, as explained in debtor's declaration, two other crucial opportunities can also be accomplished on debtor's journey to Singapore: 1st) the National University of Singapore Medical School is the leading research and experimentation facility regarding the muscle destroying melanoma with which debtor is afflicted (debtor has already spoken with several physicians there to schedule consultations and exams while he is in Singapore);  2nd) As the Court knows, one of debtor's skills is in equine health. Debtor has spoken with the president of the Singapore Polo Club to obtain employment supporting the Club's stable's horses' well being. Debtor will be interviewing for the position while in Singapore.

*3. Though debtor is financially destitute, he will secure travel and lodging with American Express Travel Points he long ago accumulated.*

16-bk-33185          Motion 8-3-2018 – pg. 10

Thereupon, debtor prays for postponement of the contempt hearing until after October 1, 2018, at which time debtor will have obtained materials demonstrating that there are no funds at HSBC Bank in Singapore or Australia under his control, dominion or custody.

### 3. Memorandum

Debtor seeks to extend the time of the Contempt Motion hearing. Presently, the hearings are scheduled for 8-23-2018. Debtor seeks an extension as to that hearing for the several good causes described below.

FRBP Rule 9006(b)(1) is the rule which allows for enlargement and extension of time and provides (no local alters this rule):

> *"In general.* **Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order."**

This application is being sent for filing on 8-5-2018, eighteen days before the date of the hearing and so the only requirement for relief is good cause.

The first good cause is that **if** there are estate assets remaining at HSBC Bank Singapore, debtor will be able fully to report about those facts after making personal inquiry at HSBC Singapore Bank.

The second good cause is that Mr. Arnot's accusations are without actual facts and rely wholly on hearsay. Debtor will make investigation and report to the Court truthfully from direct observation and inquiry.

The third good cause is relates to the fact that debtor's continuing poor health can benefit from medical consultation and treatment available in Singapore.

The fourth good cause is debtor seeking employment in a field in which he has expertise and skill. Precisely such a job is available which may be secured through interview during debtor's journey to Singapore.

### 4. Declaration of Peter Szanto

1. My name is Peter Szanto, I am the debtor herein.

2. This is my truthful declaration regarding preparation for the hearing regarding contempt and the need for postponement of that hearing.

3. Prior to November 2017, my proprietary trading programs had specific instruction settings to purchase Singapore dollars and Australian dollars under certain circumstances of market stress and uncertainty.

4. The Singapore dollars and Australian dollars purchase instructions began to be executed when I no longer has access to my trading accounts, because my programs interpreted market conditions to be such that they carried out the purchase of Singapore dollars and Australian dollars.

5. All purchases of Singapore dollars and Australian dollars were understood by me to be occurring in the United States.

6. When I learned in January 2018 that money had actually gone to Singapore and Australia, I took immediate action to make certain that money was returned to the United States and to the control of Trustee Arnot.

7. At that time, January 10, 2018, I was assured by HSBC Bank personnel in Singapore and Australia that there were no funds belonging to me in Australia or Singapore.

8. I repeated my investigations again during the last week of July 2018.

9.  To the best of my knowledge based on information which I have received from HSBC Bank personnel in Singapore and Australia, as of August 5, 2018, there are no funds belonging to me in Australia or Singapore.

10. From my conversations with Mr. Arnot, I will testify that from January 2018 until filing the contempt motion, Mr. Arnot made no allegations against me regarding contentions that I had control over any estate assets.

11. My proof of these facts is also based on money transfer advice which I received from HSBC Bank Australia [EXHIBIT A] and Statements made to me by HSBC Bank Singapore personnel at that same time in January 2018.

12. My certainty about these facts was reconfirmed by my repeated investigations in the last week of July 2018.

13. Mr. Arnot has controlled all of my Bankruptcy estate for 10 months now.

14. All instructions Mr. Arnot gives to HSBC Bank are respected and carried out.

16-bk-33185          Motion 8-3-2018 – pg. 14

15.   There is nothing which debtor can do regarding HSBC bank.

16.   There is nothing which debtor can control at HSBC Bank and nothing over which debtor continues to have any authority at HSBC Bank.

17.   Upon these facts, I intend to travel to Singapore at my own expense to secure complete information about the situation.

18.   While in Singapore, I will also be seeking medical consultation regarding my continuing melanoma therapy at the National University's medical center.

19.   I believe to a reasonable certainty that additional medical consultation will be helpful to my health.

20.   While in Singapore, I will also be seeking employment in the field of equine health in which I have extensive experience.

21.   Post-petition employment will assist me in overcoming the destitution in which I am currently living.

22.   I believe that traveling to Singapore is essential to resolving this matter completely.

16-bk-33185          Motion 8-3-2018 – pg. 15

23.   Thereon, I pray postponement of the Contempt Motion so that
      I can carry out further investigation as to the matter which has
      caused the trustee to seek contempt proceedings against me.

    I declare under penalty of perjury under the laws of the United States
that the foregoing is true and correct. Signed at Irvine CA.

Dated 5 Aug. 2018   /s/ _____ Peter Szanto


## 5. Conclusion

    Debtor requests an extension of the hearing to regarding
contempt.


    The good cause for postponement is to demonstrate that the
Trustee's accusations against debtor have no basis in fact and that all
property of debtor's Bankruptcy estate is already with the Trustee.



    Respectfully,


Dated 5 August /2018   /s/ _____ Peter Szanto

# PROOF OF SERVICE

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the with action. My business address is PO Box 10451, Newport Beach CA 92660. On the date indicated below, I personally served the within:

MOTION

a. Internal Revenue Service, PO Box 7346, Philadelphia PA 19101
b. First Service Residential, 15241 Laguna Canyon Rd, Irvine CA 92618
c. JPMorgan Chase Bank, represented by:
                    Cara Richter  c/o Shapiro & Sutherland
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683

d. Bank of America, c/o McCarthy & Holthus
     920 SW 3rd Av., Portland OR 97204
e. Oregon Department of Revenue, 955 Center St., Salem OR 97301
f. Chapter 7 Trustee, Stephen P Arnot, POBox 1963, Lake Oswego OR 97035
     by e-mail to arnotlaw@sbcglobal.net
g. Susan Szanto, 11 Shore Pine, Newport Beach CA 92657

by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 8-6-2018 *Maquisha Reynolds* **Maquisha Reynolds**

16-bk-33185          Motion 8-3-2018 – pg. 17



**HSBC**

HSBC BANK USA, N.A.

OUR REF # 010309791
DATE: 10/JAN/2018
BOOK TRANSFER CREDIT ADVICE

CREDIT A/C # T278527256          ***********$20,372.01          ML01538
REF:AUK10018RK0WY41S
001146                                                REF:
PETER SZANTO                                          B/O:
PO BOX 14894                            
IRVINE, CA 92623-4894

                                        HSBC BANK AUSTRALIA LIMITED

REMITTER INFORMATION:ORG=A/C-AUHKBA091102186102, MR PETER SZANTO, 11 SHORE PINE
DRIVE, NEWPORT BEACH, CALIFORNIA/US, OGB=HSBC BANK AUSTRALIA LIMITED, ATT: FINAN
CIAL CONTROL DEPARTMENT, HSBC CENTRE L/6 580 GEORGE STREET, SYDNEY NSW 2000 AUST
RALIA, OBI=RETURN OF FUNDS AS PER HBUS REQUESTPETER SZANTO

BENEFICIARY INFORMATION:BNF=A/C-278527256, SZANTO          PETER, PO BOX 148
94 IRVINE CA 92623-4894 U, S,

**HSBC Bank USA**

                                        nnnnnn 01 01 001146 001464 P

A-1



HSBC

HSBC BANK USA, N.A.

OUR REF # 010309823
DATE: 10/JAN/2018
BOOK TRANSFER CREDIT ADVICE

CREDIT A/C # T313566836            ***********$60,001.99                ML01652
REF:AUK10018RK0WYBB4
  001237                                    REF:
PETER SZANTO                               B/O:
PO BOX 14894
IRVINE, CA 92623-4894

        HSBC BANK AUSTRALIA LIMITED

REMITTER INFORMATION:ORG=A/C-AUHKBA091102186102, MR PETER SZANTO, 11 SHORE PINE
DRIVE, NEWPORT BEACH, CALIFORNIA/US, OGB=HSBC BANK AUSTRALIA LIMITED, ATT: FINAN
CIAL CONTROL DEPARTMENT, HSBC CENTRE L/6 580 GEORGE STREET, SYDNEY NSW 2000 AUST
RALIA, OBI=RETURN OF FUNDS AS PER HBUS REQUESTPETER SZANTO

BENEFICIARY INFORMATION:BNF=A/C-313566836, SZANTO        PETER, PO BOX 148
94 IRVINE CA 92623-4894 U, S,

**HSBC Bank USA**

nnnnnn 01 01 001237 001572 P

A-2

 **HSBC**

```
HSBC BANK USA, N.A.

OUR REF # 010309776
DATE: 10/JAN/2018
BOOK TRANSFER CREDIT ADVICE
```

CREDIT A/C # T313572046     ************$1,009.99     ML01653
REF:AUK10018RK0WXXTS
 001238                     REF:
PETER SZANTO              B/O:
PO BOX 14894
IRVINE, CA 92623-4894

     HSBC BANK AUSTRALIA LIMITED

<u>REMITTER INFORMATION:</u>ORG=A/C-AUHKBA091102186102, MR PETER SZANTO, 11 SHORE PINE
DRIVE, NEWPORT BEACH, CALIFORNIA/US, OGB=HSBC BANK AUSTRALIA LIMITED, ATT: FINAN
CIAL CONTROL DEPARTMENT, HSBC CENTRE L/6 580 GEORGE STREET, SYDNEY NSW 2000 AUST
RALIA, OBI=RETURN OF FUNDS AS PER HBUS REQUEST PETER SZANTO

<u>BENEFICIARY INFORMATION:</u>BNF=A/C-313572046, SZANTO     PETER, PO BOX 148
94 IRVINE CA 92623-4894 U, S,

**HSBC Bank USA**

nnnnnn 01 01 001238 001573 P

A-3

# FedEx

## Express

CLERK US BANKRUPTCY COURT
DISTRICT OF OREGON
AUG - 7

ORIGIN ID:DTHA    (949) 887-2369
SZANTO
SZANTO
P.O.BOX 14894

IRVINE, CA 92623
UNITED STATES US

SHIP DATE: 06AUG18
ACTWGT: 0.50 LB
CAD: 112243018/INET4040

BILL SENDER

TO **CLERK-DIST OREGON**
**US BANKRUPTCY COURT PORTLAND**
**1001 SW 5TH AVE #700**
**ROOM 700 @ 1001 SW 5TH AV**
**PORTLAND OR 97204**
(503) 610-0865          REF:
INV:
PO:                              DEPT:



FedEx
Express




TUE - 07 AUG 10:30A
**PRIORITY OVERNIGHT**

TRK#
0201    **7729 1013 1315**

# WS MRIA                    97204
                 OR-US    PDX



Extremely Urgent

RT-537

**9:30 AM 16-33185 pcm 7 bk**    **Peter Szanto**

  **Debtor's Notice of Motion and Motion to Extend the Date of Hearing Regarding 533 Motion For Contempt (546)**

Peter Szanto - db  X

Stephen P Arnot - tr       STEPHEN P ARNOT  X

Stephen P Arnot - tr

Evidentiary Hearing:    Yes: ☐    No: ☒

Debtor's Motion to set over hearing set on 8/23/18 re: Trustee's Motion for Contempt is Denied for

reasons stated on the record.

Order to be prepared by: ☐ Clerk's Office  ☐ Chambers  ☐

DOCKET ENTRY:

PETER SZANTO *949-887-2369*
11 Shore Pine
Newport Beach CA 92657

US BANKRUPTCY COURT
DISTRICT OF OREGON

2018 AUG 13 AM II: 13

LODGED___REC'D _____
___NO___DOCKETED____

# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

| | |
|---|---|
| **In Re Peter Szanto** | **# 16 –bk-33185 pcm7** |
| **Debtor** | **Debtor's Response to** |
| | **Trustee's Contempt Motion** |
| | Hon. Judge Peter C. McKittrick, presiding |

## 1. Summary Of Debtor's Response

**Yet again debtor is accused or matters which are untrue!!!**

Yet again debtor is called upon to defend himself against matters about which he has already presented a defense, presented evidence and presented oral and written testimony.

SINCE THE LAST TIME THIS MATTER CAME BEFORE THIS COURT, ABSOLUTE PROOF NOW EXISTS THAT THE TRUSTEE IS FULLY AWARE OF HIS IMPROPER ATTACK UPON DEBTOR: **SUCH SUFFICIENT AND AMPLE PROOF IS THE FACT OF THE TRUSTEE'S CURRENT ADVERSARIAL PROCEEDING AGAINST HSBC BANK (CASE # 18-ap-3029)**, wherein the trustee seeks the identical relief as in the instant motion.

16-bk-33185          Response re Contempt 8-23-2018  – pg. 1

A case where the issue of multiple filings seeking identical relief resulted in the offender being sanctioned for that fact alone is *Matter of Property Management and Investments* (1987) 69 BR 610.

In the present case, the Trustee's allegations relate to matters alleged to have occurred after the 12/5/17 conversion. Specifically at page 2 of the Motion, second ¶, first line:

> "From December 4, 2017 to December 8, 2017 the debtor transferred from his HSBC Bank USA the aggregate sum of $423,904 to HSBC Bank Australia Ltd. and HSBC Bank Singapore Ltd. (See Exhibits A and C.) The Trustee has also located another $199,998 transferred to HSBC Bank Singapore and HSBC Bank Australia on June 2017. (See Exhibit D.)"

/ **NUMBERED EXHIBIT B HEREIN**

Examining the Trustee's "EXHIBIT A." That document is merely the Trustees own calculation of what? IT IS NOT EVIDENCE! The alleged transfers are merely grouped together without any direct connection to any documents which show either – or any -- transfers of any sort or kind – or any indication of any manner that any transfers at any time were authorized, or undertaken, by debtor.

"EXHIBIT A" merely groups together items which the Trustee contends have connection and demands that this Court perceive a connection, because the Trustee has put disparate facts on the same piece of paper.

/ **NUMBERED EXHIBIT B HEREIN**

Starting with the Trustee's "EXHIBIT A's" commencing fact that $950,052 was at E-Trade; examine now [DEBTOR'S EXHIBIT C][1] (Items 1, 2, 3, 4) the amounts Trustee states came from E-TRADE: $566,877.70+$112,987.40+$9,829.87+$0.04 which equals=$689,695.11. Now, $950,052-$689695= **$260,356**. AND NOT THE $423,904 WHICH THE TRUSTEE STATES WAS TRANSFERRED!

=====================================

*1. [EXHIBIT C] This is the Trustee's record of money taken from Debtor as of 1/17/18, Trustee did not support this document with evidence of any type.*

16-bk-33185          Response re Contempt 8-23-2018  – pg. 2

From that **$260,356**, the Trustee at Motion, p.2, ¶ 3, admits that $81,602 was turned over. [$260,356 - $81,602 = $178,754].

## THUS USING THE TRUSTEE'S OWN CALCULATIONS ONLY $178,754 IS ACTUALLY SHOWN BY THE TRUSTEE'S OWN WORK TO BE "MISSING" OR NOT IN HIS POSSESSION.

As the recitation below explains, debtor expended immense efforts to make certain that $81,383.99 [EXHIBIT A] was returned to HSBC Bank and handed over to Mr. Arnot.[2]

## THUS USING THE TRUSTEE'S OWN CALCULATIONS ONLY $178,754 IS ACTUALLY SHOWN BY THE TRUSTEE'S OWN WORK TO BE "MISSING" OR NOT IN HIS POSSESSION --- AND NOW FURTHER DEDUCTING $81.383.99 [$178,754-$81,384 = $97,370].

## UPON THE TRUSTEE'S OWN CALCULATIONS [AS WELL AS MONEY HE PURPOSEFULLY NEGLECTED TO ENUMERATE] ONLY $97,370 ARE IN QUESTION !!!!

Debtor would certainly be able to demonstrate to the Court the nature of any amount were he actually permitted access to his accounts. Since the time that Trustee Arnot commenced his Trusteeship debtor has been deprived of all access to his financial accounts.

_2. No other fact is as significant as this item, in demonstrating Trustee Arnot failing to account anywhere for money that was specifically intended to satisfy his allegations regarding money allegedly sent overseas. Arnot simply did not reveal this money of which he was apprised by January 10, 2018. Arnot even tried to evade his knowledge of this item in the present motion!!!!!_

16-bk-33185          Response re Contempt 8-23-2018 – pg. 3

## 2. **Essential Facts**

At the start of this Chapter 7 proceeding began in November 2017, debtor was, immediately and without notice, deprived of access to his brokerage and bank accounts. (A total of approximately $1,300,000.00)

Through phone calls from various customer service agents at said banks and brokerage companies, alerting debtor to events such as stock exercises, stock assignments and bank overdrafts, debtor realized that his proprietary software which he had developed and put in place to control and administer his accounts was now "off line." Without total and complete co-ordination of the various financial tools which debtor managed and utilized, the ability to employ the management and supervision from the various integrated applications and software driver tools, unexpected consequences began to occur. Prime among these were unnecessary **trading losses, unplanned withdrawals and unauthorized transfers.**

Debtor's efforts to contact Trustee Arnot regarding this situation as it "spun out of control" (throughout December 2017) were unsuccessful.[3]

---

*3. One recurring theme in Mr. Arnot's conversations with debtor is that debtor is not co-operative. Debtor's immense co-operation and unending transparency will be discussed momentarily. However, in further effort to make demonstration of even greater efforts to be co-operative, debtor makes the suggestion that the Chapter 7 Trustee should delegate his duties and responsibilities to others whenever he is away and cannot be readily contacted (specifically persons who have authority to stem the dissipation and unnecessary waste, as in the instant situation, in a debtor's estate).*

When Mr. Arnot returned in January 2018, Arnot raised "fire and brimstone" with debtor regarding alleged transfers of money to Australia and Singapore.

Debtor was surprised by Arnot's allegation, because all of debtor's understanding was that the foreign currency accounts (used to trade and hedge currencies versus stock positions debtor had established at HSBC Bank in the United States) were monies which always stayed in the United States **at all times**.

Since Mr. Arnot contacted HSBC in the United States, debtor has been treated like a pariah by HSBC Bank – and no one at HSBC has returned any of debtor's phone calls and requests for information about his accounts. Likewise, as the Motion to Remove Mr. Arnot demonstrated, HSBC believes itself to be immune from compliance with the subpoena rules and requirements of FRCP 45 when propounded by debtor.

### a. *More and Greater Showing of Debtor's Diligence and Efforts*

On <u>January 2nd or 3rd, 2018</u>, debtor was accused by Mr. Arnot of not complying with this Court's turnover orders regarding money at HSBC Bank in the United States. Debtor immediately made extraordinary efforts to contact HSBC Bank in the United States, but was thwarted at every step. No one at HSBC, after the issuance of the conversion order, has ever bothered to return even one of debtor's requests for communication. HSBC Bank has simply disregarded every effort by debtor to know various important matters regarding his accounts and to obtain the records thereof (so as to resolve all misunderstanding regarding debtor's finances).

Immediately, debtor, based solely and exclusively on the many representations debtor received from Mr. Arnot – that money had been transferred to Australia and Singapore took the further extraordinary steps of contacting the HSBC Bank

organizations in those two countries.[4]

This meant contacting HSBC Bank officers in Australia and Singapore who had absolutely no familiarity with any of debtor's accounts so as to clear up the various confusions regarding the matter relating to debtor's foreign currency trading (<u>which debtor believed at all times were occurring in the United States though debtor's United States accounts</u>).

Debtor discovered to his absolutely shock and surprise, that some of the money which had always been represented to him as being located in the United States was actually in Australia. Within a few days, debtor arranged for the return of these monies to HSBC in the United States [EXHIBIT A]. These documents [EXHIBIT A] were immediately provided to Mr. Arnot (but intentionally suppressed by Mr. Arnot from being revealed to this Court).

**<u>No money was ever in debtor's possession and the entire set of transactions was entirely for the benefit of debtor's estate.</u>**

**<u>AND TO BE COMPLIANT WITH THE RULES THAT ALL MONEY BE UNDER THE CONTROL OF THE TRUSTEE!!!!!</u>**

**<u>AND THESE MATTERS WERE RESOLVED BY 1-10-2018; 9 MONTHS AGO</u>**!!

───────────────────────────────────

*4. Phone calls to these countries are not cheap and becoming clear about time differences to reach persons during business hours is also not easy.*

16-bk-33185          Response re Contempt 8-23-2018 – pg. 6

Debtor undertook and completed all this work in full, complete and total co-operation with his duties, with neither instruction nor participation from Mr. Arnot and in the belief that it would further his efforts quickly to emerge from Bankruptcy.

## **<u>Debtor was apprised of the situation on January 2nd or 3rd, 2018 and the money was back in the United States by January 10, 2018 [EXHIBIT A].</u>**

Debtor was told by the various persons he contacted in Australia that all of the money which had been transferred from HSBC Bank in the United States was now entirely and totally returned to to United States. This occurred prior to January 10, 2018.

As for HSBC in Singapore (**<u>again in the January 2-10th, 2018 time period</u>**). After a multitude of phone calls to a multitude of bank officers at HSBC Singapore, debtor was told that all monies from the United States had been returned. However, debtor was told that because all of the communications were telephonic, debtor was not entitled to any written advice of these facts.

Again, all of these events regarding debtor expending his efforts to ensure return of money to Trustee Arnot **<u>occurred in the first 10 days of January 2018</u>**.

Debtor acted with speed, promptness and alacrity to resolve those matters of which he is obligated to accomplish so as to emerge from Bankruptcy in the manner provided for by law. Only 8 month later did the Trustee bother to castigate debtor for matters which had already been accomplished, but which provided the Trustee another opportunity to barratriciously to be enriched with undeserved fees.

16-bk-33185          Response re Contempt 8-23-2018 – pg. 7

*8 months after debtor resolved matter did Arnot file contempt motion.*

*9 months ago is when events happened.*

### *b. Irrespective of All of Debtor's Efforts, Mr. Arnot Continues to Rely on Representations of Persons Whose Tasks are Merely Clerical*

After, the above described events, Mr. Arnot did not communicate further with debtor regarding debtor's accounts at HSBC Bank. Nor did Mr. Arnot question debtor's efforts at management and supervision of debtor's accounts at HSBC Bank to be compliant with conversion. Nor was there any communication regarding debtor's expending time and effort to obtain return of all monies to Trustee Arnot and debtor's Bankruptcy estate.

Mr. Arnot has relied only on hearsay statements from persons whose job function at HSBC Bank is to respond to subpoenas. And **NOT** person's whose responsibilities include administrative banking functions, actual account service with accounting tasks or management of client relationship responsibilities.

Mr. Arnot's continuing disbelief of debtor, fueled and aggrandized by multitudes of statements of disbelief regarding debtor from many other persons, **overpowered all of Mr. Arnot's objective analysis of the issues** related to money transfers which Mr. Arnot sought to assess.

After January 10, 2018, Mr. Arnot told debtor of no further issue regarding **ANY** HSBC Bank matter. Mr. Arnot told debtor of no further action in **ANY** HSBC Bank matter -- Arnot made no further requests of debtor regarding the HSBC Bank matter and did not apprise debtor of anything that was occurring regarding **ANY** HSBC Bank matter.

**Nonetheless, on April 10, 2018, Mr. Arnot filed an adversarial action in this Court (18-ap-3029) against HSBC Bank.**

16-bk-33185          Response re Contempt 8-23-2018  – pg. 8

**Regardless of any other issue in this case, by the filing of an action against HSBC, Mr. Arnot represented to this Court that he knew and that he understood that debtor did not have any control over any moneys which might be at HSBC BANK of any type! That is, why would Arnot sue HSBC if he thouht debtor controlled any money??**

To reiterate, debtor did everything in his power to secure return of estate money to the trustee **by January 10, 2018**. For three months, Mr. Arnot apparently had no thoughts of this matter. On April 10, 2018, Mr. Arnot decided that more money could be obtained and so sued HSBC. **Again confirming that debtor controlled nothing at HSBC Bank!!**

Then, from April 10, 2018 until July 9, 2018, the matter was not prosecuted, but instead was stipulated to be stayed.

**Now, apparently because Mr. Arnot is unable to secure any statement from HSBC (in either Australia or Singapore) that debtor has no money at HSBC Bank, the burden of proving (THE NEGATIVE) that debtor has neither dominion nor control over any money at HSBC Bank in Singapore or Australia falls on Peter Szanto.**

Of course, the most significant consideration is this: Mr. Arnot has controlled all of debtor's estate for 10 months now. All instructions Mr. Arnot has given to HSBC Bank have been respected and carried out. There is nothing debtor can do regarding HSBC Bank in Australia or Singapore, nothing which debtor can control at HSBC Bank and nothing over which debtor continues to have any authority at HSBC Bank in the United States.

16-bk-33185          Response re Contempt 8-23-2018  – pg. 9

*since November 2017*

Upon these basis, Mr. Arnot is seeking that the Court find debtor in contempt regarding matters **regarding which debtor has absolutely no control, no dominion, no authority, no possession and no influence**.

To reiterate, Mr. Arnot, armed with valid court orders has been able to seize approximately $1.3 million of debtor's assets. Mr. Arnot now seeks to hold debtor in contempt **upon Arnot's own and solitary mere speculation** that in some manner, somehow, debtor still has funds which belong to the Bankruptcy estate.

Now, after 10 months of attempting to secure money from HSBC, which the record shows that Mr. Arnot has successfully recovered, the effort has now returned to seeking to exert further punative efforts against debtor – not merely to recover money – but to make certain that debtor is made to look ridiculous and contemptuous before Judge McKittrick.

Again, the purpose is not to secure money, but rather to drive one final nail in debtor's coffin to make certain that every shred of credibility is destroyed so as to make certain that debtor will not be able to recover any of his money whatsoever.

### c. Trustee's Further Efforts to Terrorize Debtor

The Trustee knows that a request to hold debtor in contempt will have a most profound and devastating effect on debtor.

However, not once, not ever in Trustee's motion is there any concrete or definitive identification of anything which debtor did. The accusation that debtor undertook transfers is unsupported by any facts other than Mr. Arnot's accusation.

16-bk-33185          Response re Contempt 8-23-2018 – pg. 10

The truth of the matter is that after 11-30-2017, Mr. Arnot shut down debtor's access to any of debtor's financial assets. The shutting down of debtor's access, then thereafter replaced by access from Mr. Arnot and / or Ms McClurg only, opens the door to the possibility one of those persons may have given instructions within the accounts with unanticipated results.

In sum then, debtor has done all that was required and more!!!! Such behavior is the opposite of contempt and should be lauded.

### 3. Opposition Memorandum

The Trustee relies exclusively on 11 USC 521(a)(4) which requires debtor to surrender of property and records.

Here, debtor has surrendered all property in his possession as required. When alerted (*see supra*) of money possibly in Australia, debtor acted with diligence and had money returned to the Trustee. As for records, debtor never had any need to download records (and thereby waste paper or invite possible security breaches), and so when the Trustee barred debtor's access, debtor had no records in his possession which he could provide to the Trustee.

#### a. *THERE IS NO DEMONSTRATION OF INTENT*

As far as debtor can tell an integral part of the Oregon Bar Exam must be to test that a prospective attorney can write conclusorily. That is, that they can extrapolate conclusions from words without the need to interject content, law, truth or facts. Debtor believes this because all Oregon attorneys he has encountered in Judge McKittrick's court are very highly praised for their conclusions without facts, law or truth.

16-bk-33185          Response re Contempt 8-23-2018 – pg. 11

At motion, pp. 3-4, the Trustee references to *Zilog* that intent is necessary for contempt to lie, **but never articulates that debtor ever had any intent to withhold anything**!! In other words, just another conclusion without facts, law or truth.

Reviewing, further, the entire of *Zilog* does not even use the word intent even once, but rather focuses on whether an action was undertaken knowingly. Of course, Arnot does not state what Szanto knew, or when Szanto knew it, but rather concludes intent without facts, law or truth.

Here, debtor has testified (see declaration) that if any movement of money occurred after the conversion date, it was without his knowledge or consent. Such an assertion vitiates, destroys and makes unfeasible, any possibility of intent, because no act of any sort was initiated by debtor regarding money transfer.

### *b. More Ineffective Conclusory Comments Regarding Violations*

Trustee – conclusorily as always - cites to *Renwick*, which, in fact, has not held that any party was in contempt, but merely, as in *Zilog*, requires intentional actions. Through *Renwick*, Trustee has not identified any action which debtor committed other than making the conclusory statement that debtor must have initiated transfers. (But again, there is no evidence of transfers of any sort initiated by debtor. And so the entire of Trustee's Motion because a mere arbitrary conclusion that debtor is to blame for matters that are never even properly identified by Trustee.)

### *c. Another Trustee Conclusion Without Facts as to Burdens Upon Debtor*

On p. 4 of the motion, the last sentence before the header "Conclusion," the Trustee states **yet another conclusion without facts** that there is no burden on debtor if the Court enters a contempt ORDER.

16-bk-33185          Response re Contempt 8-23-2018  – pg. 12

This is untrue, because any ORDER will demand that debtor do an act, that is turnover money, which he cannot do. This is because no money is within debtor's dominion, possession, control or authority. Such a burden is beyond even the BIBLICAL proportions of challenging the ALLMIGHTY to demand that debtor do something which he cannot do, because debtor has no pre-petition money in his control. And, more importantly, because of the Trustee's deceit and treachery, HSBC Bank has not even returned debtor's phone calls regarding any matter since the conversion ORDER.

Thus, any ORDER will be an immense – unfulfillable -- burden upon debtor, because debtor will be required to do that which is impossible.

It is a "maxim that a court will not exercise its equity powers to compel one to do that which is impossible." *State of New York v. Gorsuch* (1983) 554 F.Supp 1060, 1064. This Court should respect that maxim of fundamental law and not require debtor to do what he cannot do, because of impossibility.

## 4. Declaration of Peter Szanto

1. My name is Peter Szanto, I am the debtor herein.

2. This is my truthful declaration supporting the opposition regarding contempt.

3. Prior to November 2017, my proprietary trading programs had specific instruction settings to purchase Singapore dollars and Australian dollars under certain circumstances of market stress, economic collapse and general uncertainty.

4.  In December 2017, various Singapore dollar and Australian dollar purchase instructions began to be executed when I no longer had access to my trading accounts, because my programs interpreted market conditions to be such that they carried out the purchase of Singapore dollars and Australian dollars.

5.  **All purchases of Singapore dollars and Australian dollars were understood by me to be occurring in the United States.**

6.  When I learned in January 2018 that money had actually gone to Singapore and Australia, I took immediate action to make certain that money was returned to the United States and to the control of Trustee Arnot.

7.  At that time, January 10, 2018, I was assured by HSBC Bank personnel in Singapore and Australia that there were no funds belonging to me in Australia or Singapore.

8.  I repeated my investigations again during the last week of July 2018.

9.  To the best of my knowledge based on information which I have received from HSBC Bank personnel in Singapore and Australia, as of August 13, 2018, there are no funds belonging to me in Australia or Singapore.

10.    Based on my conversations with Mr. Arnot, I now testify that from January 2018 until filing the contempt motion, Mr. Arnot made no allegations against me regarding contentions that I had control over any estate assets outside of the United States.

11.    My proof of these facts is also based on money transfer advice which I received from HSBC Bank Australia [EXHIBIT A] and statements made to me by HSBC Bank Singapore personnel at that same time in January 2018.

12.    My certainty about these facts was reconfirmed by my repeated investigations in the last week of July 2018 with HSBC personnel in Singapore and Australia.

13.    Mr. Arnot has controlled all of my Bankruptcy estate for 10 months now.

14.    All instructions Mr. Arnot gives to HSBC Bank are respected and carried out.

15.    It is my absolute belief that Mr. Arnot's current efforts are merely focused on self-enrichment of himself and Mr. Blacklidge (IE, to garner more fees, costs and expenses from a judge known to despise debtor – and who will grant anybody anything so long as it inflicts pain, misery and anguish upon Peter Szanto.

16. There is nothing which debtor can do regarding HSBC bank, because HSBC has assured debtor that he has no money at HSBC.

17. There is nothing which debtor can control at HSBC Bank and nothing over which debtor continues to have any dominion or authority at HSBC Bank.

18. Upon these facts, I intend to travel to Singapore at my own expense to secure even more complete information about the entire situation which Mr. Arnot claims indicates has estate assets.

19. I believe that traveling to Singapore is essential to resolving this matter completely

20. I have had no volitional thought which manifests any intent to withhold estate assets from the trustee's supervision.

21. I have complied with every Bankruptcy rule with which I have been required to comply.

22. I will continue to comply with all Bankruptcy rules with which I am required to comply.

23.    As I have demonstrated, Mr. Arnot's calculations are flawed and confused, and his belief that money is being withheld from him is based on mathematical errors which are painfully evident in his papers – and shown in the instant paper not to be accurate!!

24.    Mr. Arnot has told me in the 10 years he has been a trustee he has worked on thousands of cases where there were no assets.

25.    Obviously, when there are no assets, Mr. Arnot never had to develop the essential accounting skills properly to manage $1.3 million of my assets.

26.    Likewise, I have also asked Mr. Arnot about various ledgers on on which he was entering various aspects of my estate.

27.    He appeared confused by my question and told me to keep quiet.

28.    An additional issue regarding Mr. Arnot's minimal accounting skill and knowledge is the fact this causes my conversations with him to be absurd, because Mr. Arnot does not believe I have a right to know the assets and value of my Bankruptcy estate.

29.   To reiterate: I transferred no assets after the conversion order.

30.   I have been told by persons at HSBC Singapore and HSBC Australia that I have no money there.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 13 Aug. 2018   /s/ _____ Peter Szanto

## 5. Conclusion

Debtor should not be punished for matters wholly and exclusively within the control of the trustee! That is, all bank accounts / brokerage accounts were all within Mr. Arnot's control after 11-30-2017. Debtor presumed that the Trustee (per rule) would manage debtor's estate so as to preserve assets. Instead, Mr. Arnot vacationed on the French Riviera, took life easy, and simply did not care. While such *insouciance* of the French is charming and is an envied lifestyle, it does not comport with the stronger American values of diligence, perspicacity and astute trusteeship to prevent capital losses.

Every matter of which Mr. Arnot complains is of his own making

because he allowed more than a month to pass without any action what-so-ever to preserve and protect estate assets!!!

Further, the other demonstrable area of Mr. Arnot's failing is in the accounting for estate assets which he has done poorly and inaccurately.

While it may be true that Mr. Arnot excels when estates have no assets, in this case he has failed to act with the requisites of diligence and asset preservation so as to benefit anybody but himself.

The contempt Motion must be denied.

Respectfully,

Dated 13 August /2018    /s/ _____ Peter Szanto

# **PROOF OF SERVICE**

    **My name is Maquisha Reynolds, I am over 21 years of age and not a party to the with action. My business address is PO Box 10451, Newport Beach CA 92660. On the date indicated below, I personally served the within:**

<u>Response</u>

a. Internal Revenue Service, PO Box 7346, Philadelphia PA 19101
b. First Service Residential, 15241 Laguna Canyon Rd, Irvine CA 92618
c. JPMorgan Chase Bank, represented by:
                        Cara Richter  c/o Shapiro & Sutherland
  1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683

d. Bank of America, c/o McCarthy & Holthus
     920 SW 3rd Av., Portland OR 97204
e. Oregon Department of Revenue, 955 Center St., Salem OR 97301
f. Chapter 7 Trustee, Stephen P Arnot, POBox 1963, Lake Oswego OR 97035
     by e-mail to arnotlaw@sbcglobal.net
g. Susan Szanto, 11 Shore Pine, Newport Beach CA 92657

    **by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.**

    **I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.**

    **Dated 8-13-2018 ___/s/ *Maquisha Reynolds* Maquisha Reynolds**

 **HSBC**

HSBC BANK USA, N.A.
OUR REF # 010309776
DATE: 10/JAN/2018
BOOK TRANSFER CREDIT ADVICE

CREDIT A/C # T313572046    ************$1,009.99          ML01653
REF:AUK10018RK0WXXTS
   001238                           REF:
PETER SZANTO                        B/O:
PO BOX 14894
IRVINE, CA 92623-4894
         HSBC BANK AUSTRALIA LIMITED



REMITTER INFORMATION:ORG=A/C-AUHKBA091102186102, MR PETER SZANTO, 11 SHORE PINE
DRIVE, NEWPORT BEACH, CALIFORNIA/US, OGB=HSBC BANK AUSTRALIA LIMITED, ATT: FINAN
CIAL CONTROL DEPARTMENT, HSBC CENTRE L/6 580 GEORGE STREET, SYDNEY NSW 2000 AUST
RALIA, OBI=RETURN OF FUNDS AS PER HBUS REQUEST PETER SZANTO


BENEFICIARY INFORMATION:BNF=A/C-313572046, SZANTO          PETER, PO BOX 148
94 IRVINE CA 92623-4894 U, S,



**HSBC Bank USA**

                              nnnnnn 01 01 001238 001573 P

A-1

 **HSBC**

```
┌─────────────────────────────────────────────┐
│ HSBC BANK USA, N.A.                          │
│                                              │
│ OUR REF # 010309823                          │
│ DATE: 10/JAN/2018                            │
│ BOOK TRANSFER CREDIT ADVICE                  │
└─────────────────────────────────────────────┘
```

CREDIT A/C # T313566836    | ***********$60,001.99 |    ML01652
REF:AUK10018RK0WYBB4

  001237                               REF:
PETER SZANTO                        B/O:
PO BOX 14894
IRVINE, CA 92623-4894

HSBC BANK AUSTRALIA LIMITED



REMITTER INFORMATION:ORG=A/C-AUHKBA091102186102, MR PETER SZANTO, 11 SHORE PINE
DRIVE, NEWPORT BEACH, CALIFORNIA/US, OGB=HSBC BANK AUSTRALIA LIMITED, ATT: FINAN
CIAL CONTROL DEPARTMENT, HSBC CENTRE L/6 580 GEORGE STREET, SYDNEY NSW 2000 AUST
RALIA, OBI=RETURN OF FUNDS AS PER HBUS REQUESTPETER SZANTO

BENEFICIARY INFORMATION:BNF=A/C-313566836, SZANTO        PETER, PO BOX 148
94 IRVINE CA 92623-4894 U, S,

**HSBC Bank USA**

                             nnnnnn 01 01 001237 001572 P

A2

 **HSBC**

HSBC BANK USA, N.A.

OUR REF # 010309791
DATE: 10/JAN/2018
BOOK TRANSFER CREDIT ADVICE

CREDIT A/C # T278527256       ***********$20,372.01       ML01538
REF:AUK10018RKOWY41S
 001146                                    REF:
PETER SZANTO                               B/O:
PO BOX 14894
IRVINE, CA 92623-4894

       HSBC BANK AUSTRALIA LIMITED



<u>REMITTER INFORMATION:</u>ORG=A/C-AUHKBA091102186102, MR PETER SZANTO, 11 SHORE PINE
DRIVE, NEWPORT BEACH, CALIFORNIA/US, OGB=HSBC BANK AUSTRALIA LIMITED, ATT: FINAN
CIAL CONTROL DEPARTMENT, HSBC CENTRE L/6 580 GEORGE STREET, SYDNEY NSW 2000 AUST
RALIA, OBI=RETURN OF FUNDS AS PER HBUS REQUESTPETER SZANTO

<u>BENEFICIARY INFORMATION:</u>BNF=A/C-278527256, SZANTO       PETER, PO BOX 148
94 IRVINE CA 92623-4894 U, S,

**HSBC Bank USA**

nnnnnn 01 01 001146 001464 P



## Post Conversion Transfers

**E-Trade Account Number -5272**

11/30/2017 Balance:
$950,052.51

Transferred:
12/1 - $99,999.97
12/4/ - $99,999.99
12/5 - $71,777.77

To HSBC Account Number -9269

TOTAL:
$277,777.73

Global Transfers Overseas:
12/4/17 - $77,900
12/5/17 - $99,999.98

Domestic Transfers
to BofA -2580:
12/6 - Check
#1202 $99,998.00
12/8 -reversal by bank

Interbank Transfers
to HSBC on 12/7:
Acct. -8495: $10,542.62
Acct. -2046: $11,000
Acct. -8316: $20,100
Acct. -6836: $25,000
Acct. -7256: $33,333.01
Acct. -6836: $99,998

EXHIBIT B

EXHIBIT
B of
RESPONSE



Trustee's

6368752.1



**FORM 2**
**ESTATE CASH RECEIPTS AND DISBURSEMENTS RECORD**

Case No: 16-33185
Case Name: Peter Szanto

Taxpayer ID No: XX-XXX1767
For Period Ending: 01/17/2018

Trustee Name: Stephen Arnot
Bank Name: Associated Bank
Account Number/CD#: XXXXX4977
    Checking

Blanket Bond (per case limit): $63,926,457.00
Separate Bond (if applicable):

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Transaction Date | Check or Reference | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposits ($) | Disbursements ($) | Account/CD Balance ($) |
| 01/10/18 | 17 | E*Trade Financial PO Box 484 Jersey City, NJ 07303-0484 | Liquidation of brokerage account no xxxx2698 Liquidation of E*Trade brokerage account no xxxx2698 | 1129-000 | $0.04 | | $0.04 |
| 01/10/18 | 17 | E*Trade Financial PO Box 484 Jersey City, NJ 07303-0484 | Liquidation of brokerage account no xxxx6400 Liquidation of E*Trade brokerage account no xxxx6400 | 1129-000 | $9,829.87 | | $9,829.91 |
| 01/10/18 | 17 | E*Trade Financial PO Box 484 Jersey City, NJ 07303-0484 | Liquidation of brokerage account no xxxx5272 Liquidation of E*Trade brokerage account no xxxx5272 | 1129-000 | $566,877.70 | | $576,707.61 |
| 01/10/18 | 45 | Bank of America P O Box 15047 Wilmington, DE 19850-5047 | Liquidation of bank of America Account No xxxxx 2580 Per Court order, Bank of America turned over funds in checking account No xxxxx 2580 in the name of the debtor. Deposits came from debtor's E*Trade acct | 1129-000 | $112,987.40 | | $689,695.01 |
| 01/17/18 | 16 | Union Bank San Francisco, CA | balance in Account No. 2572 close out balance in acct no 2572 on 1-12-18 | 1129-000 | $21,807.34 | | $711,502.35 |
| 01/17/18 | 15 | Union Bank San Francisco, California | close out balance in account no 2580 as of 1-11-18 | 1129-000 | $14,297.72 | | $725,800.07 |
| 01/17/18 | 101 | Peter Szanto | Return of Debtors Exempt Social Security deposits Returned to debtor 2 months social security deposits into the DIP account that are exempt | 8100-002 | | $1,194.00 | $724,606.07 |

| | | COLUMN TOTALS | | | $725,800.07 | $1,194.00 |
| | | Less: Bank Transfers/CD's | | | $0.00 | $0.00 |
| | | Subtotal | | | $725,800.07 | $1,194.00 |
| | | Page Subtotals: | | | $725,800.07 | $1,194.00 |



FedEx Ship Manager - Print Your Label(s)

RT **537** 6
FZ 16:00 C
0788
08.13

**FedEx**

xpress

ORIGIN ID:DTHA    (949) 887-2369
SZANTO
SZANTO
P.O.BOX 14894

IRVINE, CA 92623
UNITED STATES US

SHIP DATE: 11AUG18
ACTWGT: 0.50 LB
CAD: 112243018/INET4040

BILL SENDER

TO  **CLERK-DIST OREGON**
**US BANKRUPTCY COURT PORTLAND**
**1001 SW 5TH AVE #700**
**ROOM 700 @ 1001 SW 5TH AV**
**PORTLAND OR 97204**
(503) 610-0865          REF:
INV:
PO:                          DEPT:

**FedEx**
Express

E

FedEx
TRK# 7729 5409 0788
0201

MON – 13 AUG AA
STANDARD OVERNIGHT

**XH MRIA**

97204
OR-US  PDX



262670B  08/11  552J1/3309/DCA5

CLERK U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

AUG 13 2018

LODGED_____ REC'D
PAID_____ DOCKETED

DISTRICT OF OREGON
2018 AUG 13 AM 11: 13
LODGED____ REC'D
PAID____ DOCKETED

Do not ship liquids, blood, or clinical specimens in this packaging.

Extremely Urgent

US BANKRUPTCY COURT
DISTRICT OF OREGON

2018 MAY 22 PM 4:01

LODGED____REC'D____

# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

| | |
|---|---|
| **In Re Peter Szanto** | **# 16 –bk-33185 pcm7** |
| | |
| **Debtor** | **(and all related adversarial proceedings** |
| | **1. Notice of Motion for Disqualification and Motion for Disqualification of Honorable Judge Peter C. McKittrick** |
| | **28 USC § 144,  28 USC § 455** |
| | **2. Affidavit of Peter Szanto in Support** |
| | **3. Petition for Referral and Transfer to U.S. District Court on Grounds that this Motion for Disqualification is not a Core Proceeding on Which This Court Can Enter an Order** |
| | **28 USC § 157** |

16-bk-33185        Recusal Motion 5-23 -2018 – pg. 1

## 1. Plaintiff's Certification Relating to Pre-filing Conferral
## (Certification Pursuant to LBR 7007-1(a))

Debtor telephoned counsel for the various entities (between February 2, 2018 and May 21, 2018) identified on the proof of service seeking discussion as to the matters herein. Not one of said counsel returned any of debtor's requests for conferral.

Debtor also telephoned Mr. Arnot and Mr. Blacklidge on 5-2-2018 to discuss the matters presented herein. The calls went to voice mail and debtor requested a return call, ASAP.

Thereafter, neither Mr. Arnot nor Mr. Blacklidge made any effort to contact debtor.

As of the signing of the instant paper, debtor has received no further communication from either Mr. Arnot or Mr. Blacklidge.

Debtor has also, on numerous occasions, attempted to communicate with Mr. Henderson, Mr. Laurick, Mr. Kono, Ms McClurg, all to no avail

Thus, pursuant to rule, debtor has sought conferral so as to resolve the situation, but has been unsuccessful in that regard.

16-bk-33185          Recusal Motion 5-23 -2018 – pg. 2

I certify under penalty of perjury under the laws of the United States, that foregoing is true and correct. Signed at Irvine CA.

DATED 5-23-2018   s/_____ Peter Szanto

## 2. <u>Introduction</u>

To the Honorable Court, the Chapter 7 Trustee, the U.S. Trustee and the various other interested parties herein, please take notice comes now debtor seeking recusal of Judge McKittrick for cause (meaning intense bias and prejudice which are readily recognizable as such by any objective observer) and which make further proceedings in this Court preordained as having the predicable outcome of further adverse decisions, ALL to debtor's detriment.

As matters of fact and law, Judge McKittrick has become an active participant in this action on all manners and all grounds in opposition to debtor.

Judge McKittrick can no longer carry out any act in this action that requires judicial impartiality and fairness.

### 3. Necessity for the Hearing of this
### Application in the District Court

Comes now debtor, Peter Szanto, who gives notice to this Court, the trustees and the creditors that he hereby moves this Court for the disqualification of the Honorable Judge McKittrick from further participation in this case. This matter is requested to be heard expeditiously.

Referral to, and final determination by the U.S. District Court is required, on grounds that proper, unbiased determination of Judge McKittrick's disqualification is not a core proceeding in which this Court can enter a final order. 28 USC § 157 and *Stern v. Marshall* (2011) 131 S.Ct. 2594.

## LIKEWISE, PURSUANT TO FRBP 7012(b) DEBTOR ABSOLUTELY DOES NOT CONSENT TO ENTRY OF FINAL ORDERS OR JUDGMENT BY THE BANKRUPTCY COURT!!

## 4. GROUNDS

**FIRST:** 28 USC § 455 allows disqualification of any justice, judge, or

magistrate judge:

16-bk-33185            Recusal Motion 5-23 -2018  – pg. 4

(a) in any proceeding in which said judge's impartiality might reasonably be questioned.

(b)(1) Where the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

**SECOND:** 28 USC § 144 addresses the bias or prejudice of judge.

28 USC § 144 allows a litigant to file an affidavit that the judge before whom the matter is pending has a personal bias and prejudice against him and in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

## 5 . ESSENTIAL FACTS

When the facts of this Bankruptcy are distilled to their essential and truthful substance all that has happened is that a Chapter 11 debtor who has sought reorganization, has been shown to be disorganized.[1] The words themselves demonstrate the Court's bias: rather than recognize the necessity for community property analysis (the root of the disorganization),

_1. Disorganization is readily explained in the context of debtor and his spouse (of 20 years) and business partner (of 40 years) seeking to wrap-up an ultra complex relationship fairly to both parties. As matters of fact and law all that was ever really shown was that debtor and his spouse's finances are extensively commingled. Such commingling is what California law requires!! And, further bias is demonstrated by Judge McKittrick's failure to refer this matter to a judicial officer in a community property state._

the Court chose to inflict a non-community property analysis upon debtor so as to find him lacking based only on those community property rules which debtor had carried out as required by his wife's residence in a community property jurisdiction.

However, on balance, as to the various matters which may arguably be characterized as debtor's disorganization, debtor met every criticism by taking immediate action to rectify the errors that troubled the Court so as to be wholly transparent in his finances.

Instead of viewing this as *bona fide* rehabilitation and effort to resolve the tangle of financial disorganization, Judge McKittrick's decisions have been, and continue to be, punitive in the extreme, so as to deprive debtor of rights and protections of Title 11 and other laws to which he is absolutely entitled .

As proceedings herein progress, Judge McKittrick's comments, decisions and general statements become increasingly more biased and lacking in impartiality towards debtor Szanto.

A full annotation of the many acts of bias is impossible at the present time, because debtor is trying desperately to secure enough money to obtain food just to stay alive – and a complete and thorough analysis would be presently too time consuming.

Ultimately, the most overriding matter throughout the entire of this Bankruptcy which conforms to the 28 USC § 455(a) standard of the questioning of a judge's impartiality is Judge McKittrick's unending belief (often times to the point of absurdity) that all attorneys state only all of the truth all of the time.

For Judge McKittrick, all attorneys (from the beginning of time until the end of all things) tell – and will always tell the truth. This is the bedrock of Judge McKittrick's legal philosophy: that passing the bar exam always creates complete honesty and righteousness. It appears to debtor that Judge McKittrick actually believes that no attorney every pruposefully lies so as to prevail in an action.

The folly and full dimension of Judge McKittrick's misplaced confidence in attorney truthfulness was perfectly exemplified at the hearing of May 16, 2018.

Debtor complained that the Chapter 7 trustee had not timely sent papers to him. Debtor argued that the proof of failed mailing was not merely the lack of receipt of physical papers, but also the lack of receipt of the papers by the agreed to e-mail between the trustee and debtor.

*[Debtor's attestation of.]*

Rather than inquiring this important point of failed e-mailing from the trustee or his counsel, Judge McKittrick merely flew into one of his intolerant rages against debtor -- that debtor often complains of not receiving opposition mailings.

16-bk-33185          Recusal Motion 5-23 -2018  – pg. 7

The point of this analysis is that rather than inquiring from the trustee the truth of debtor's e-mail complaint – Judge McKittrick was much more comfortable not even making any impartial inquiry, but immediately attacked debtor as to culpability. *and the highly offensive attack on credibility.*

This example is cited merely for its nearness in time and because it dramatically exemplifies Judge McKittrick's constant irrational and misguided attacks on debtor in absolute derogation of logic and truth.

## 6. FACTS WHICH JUSTIFY DISQUALIFICATION and RECUSAL

(this is a partial listing which will be elaborated prior to and at the time of the hearing in the District Court)

Debtor seeking recusal of Judge McKittrick contends, that Judge McKittrick's actions, for example in case # 16-3114, (failing to enforce default by allowing defendants ~~an~~ *a* legally improper number of opportunities properly to plead; disregarding debtor's efforts to perfect a *DEFAULT* judgment; constraining debtor's discovery, but allowing *its* discovery to continue; failing to respect the 28 USC § 157 mandatory rules for withdrawal of the Bankruptcy reference) all clearly demonstrate acts which any reasonable observer, with knowledge of the facts and law, could and would readily characterize as bias against debtor and extreme prejudice against debtor's positions.

On these bases, debtor asks Judge McKittrick to excuse himself from further consideration of matters in this case, based on the facts and evidence in the record and matters stated herein. Judge McKittrick is asked to refrain from further participation in this case *(and its adversarial proceedings).*

## 7. EVIDENCE of BIAS and MEMORANDUM of LAW
## in SUPPORT of DISQUALIFICATION

a.      **This is a Straight Forward Case Which Would Have Long Ago Been Discharged But for Judge McKittrick's Intense Bias Against Debtor !!**

The plain fact of this case is that because debtor is a pro se litigant, Judge McKittrick has made the prejudiced presumption that debtor's case has neither substance nor merit. This couples well with Judge McKittrick's underlying philosophy that all attorneys speak all of the truth all of the time. Thus, all attorney statements (regardless of truth) will always, always trump debtors contentions.

As a matter of fact, however, the correct way to ascertain the merits and the substance of debtor's claims is to allow debtor the opportunity to present evidence and testimony to prove his claims. This was clear in the first instance when, (in 16-ap-3114) even though defendants had clearly defaulted, Judge McKittrick protracted the case without justification – rather than allow a prove-up hearing which would have settled the matter. Judge McKittrick's abuse of discretion (all to debtor's detriment) was failure to hold defendants' culpable for not responding to the complaint for 6 months.

In that same vein of bias, Judge McKittrick ended discovery for debtor on July 31, 2017, but permitted discovery to continue for defendants upon wholly fabricated and false grounds. Judge McKittrick failed to recognize that Susan Szanto's deposition was available to defendants without subpoena under state law. Nevertheless Judge McKittrick extended discovery based on defendants' perjured representations. As such Judge McKittrick became an active participant in causing Susan Szanto extreme emotional distress regarding the taking of a deposition based on a subpoena with which she was never served.

16-bk-33185          Recusal Motion 5-23 -2018 – pg. 9

Here, the metric of bias is that Judge McKitrrick knew as early July 2017 that he would be deciding the 16-3114 case in favor of defendants. This was evident when Judge McKitrick: 1) sanctioned Peter Szanto for discovery lateness engendered by an armed attack on his family by Victor Szanto; 2) disallowed "boxes boxes and boxes" of relevant materials solely based on the unverified testimony of Mr. Henderson; 3) let defendants make a non-statutory discovery request for denials; 4) took no action when evidence emerged that defendants' counsel had suborned improper influence of a judge in Nevada in abrogation of 11 USC § 362.

### b. <u>Failure to Follow Supreme Court Metric for *Pro Se* Litigants Demonstrates Further Bias</u>

The U.S Supreme Court hs held that "a *pro se* litigant in essence stands in the place of an attorney." *Business Guides v. Chromatic Communications* (1991) 498 US 533, 558. Judge McKittrick, however, has not provided that measure of attorney deference mandated by that rule and instead has consistently derided and belittled Szanto's efforts as though they were meaningless. This has happened consistently since the outset of this action by way of Judge McKittrick denying Szanto the electronic filing privilege, without any off setting additional time for ordinary mail delivery–thereby causing Szanto to incur thousands of dollars of unnecessary expenses for FEDEX delivery. Likewise, contrary to the Supreme Court mandate, Judge McKittrick has not treated Szanto with the deference of being able to file electronically **in every other forum** where Szanto is currently pursuing actions.

### c. Deprivation of Fundamental Rights

The mandate of the 1st Amendment to the *U.S. Constitution* is that all persons are guaranteed the fundamental right to redress their grievances before courts of law.

16-bk-33185          Recusal Motion 5-23 -2018  – pg. 10

Here, because debtor is not an attorney and because debtor is in the final stages of succumbing to melanoma, he requires additional time to accomplish various aspects of this litigation. Rather than accommodating what are at worst minor delays, Judge McKittrick has purposefully deprived debtor of the minor extensions for which he has petitioned.

Ultimately, the right of redress becomes non-existent whenever a trial court has refused to follow the attorney equivalency instructions of the Supreme Court and, as here, the right of redress has ceased to exist in Judge McKittrick's court.

### d. Reasonable Question as To Judge McKittrick's Impartiality

28 USC § 455 focuses on the question of whether Judge McKittrick's impartiality can reasonably be questioned. Debtor contends that disqualification is warranted because, as presented here, Judge McKittrick simply abused his discretion by failing to treat the parties equitably.

Any objective observer of these facts would readily conclude that Judge McKittrick intensely despises debtor, harbors ill-will towards debtor and that there has been absolutely no impartiality in Judge McKittrick's conduct of the proceedings regarding. More importantly, because of Judge McKittrick's bias towards debtor, the outcome of any further proceedings which may be had before Judge McKittrick, as demonstrated by Judge McKittrick's lack of impartiality, is such that the outcome of the proceedings is a foregone conclusion as being contrary to any position which debtor may advocate or rely upon.

16-bk-33185          Recusal Motion 5-23 -2018  – pg. 11

### e. Bias and Prejudice Have Overwhelmed Every Aspect of Judge McKittrick's Decision Making and Judge McKittrick Has Become an Active Participant (Rather than an Impartial Judicial Officer) Against Szanto

Pursuant to 28 USC § 144, a litigant is allowed to file an affidavit that the judge before whom the matter is pending has a personal bias and prejudice against him and in favor of any adverse party. Such a judge shall proceed no further in the action, another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed for good cause, to be shown, for failure to file it prior to the commencement of proceedings.

Today, on May 23, 2018, for the 1st time in this matter, debtor has fully realized — after extensive study, research and analysis, that Judge McKittrick's actions were a real and profound demonstration of severe bias, hatred and prejudice.

Thereon, debtor proffers the attached affidavit.

The very good cause for bringing this disqualification now is that without the bringing of this motion, all future decisions Judge McKittrick will render will be grounded upon Judge McKittrick's personal bias towards debtor and will not be based on the law, truth or facts of this case.

Now, debtor prays another judicial officer hear the proceedings regarding Judge McKittrick's antipathy and bias against debtor. In the meantime, Judge McKittrick's participation in this action is stayed as a matter of law pursuant 28 USC § 144.

16-bk-33185          Recusal Motion 5-23 -2018  – pg. 12

## F. Request for Disqualification is NOT a Core Proceeding and
## Should be Decided in the U.S. District Court

28 USC § 157 enumerates the core proceedings which may be finally decided in the Bankruptcy Trial Court. Disqualification is not such a core proceeding and debtor prays that determination of Judge McKittrick's disqualification be determined before the United States District Court.

Thereon, debtor prays disqualification of Judge McKittrick from any further decision making or other participation in this matter.

## DECLARATION / AFFIDAVIT of DEBTOR

1. My name is Peter Szanto, I am the debtor in this action.

2. The matters stated here are true and I will testify to them in Court.

3. Judge McKittrick's dismissal, with prejudice, of the 16-ap-3114 action, has caused me to conclude that Judge McKittrick is biased and prejudiced against me and my interests.

4. I am projecting that bias to the Bankruptcy and the other causes of action which involved herein, because dismissal was contrary to the affirmative rule of *Foman v Davis* (1962) 371 U.S. 178, 182 accord *Conley v. Gibson,* (1957) 355 U.S. 41,47 wherein the U.S. Supreme Court has directed Federal Courts to decide cases on their merits, not abstract constraining technicalities which are unproven.

*, and credibil...*

5. Judge McKittrick's bias towards me and favoritism towards the defendant baffle me, because I have tried to do everything correctly properly to pursue this series of actions.

6. I would have brought this motion much sooner had I fully-known and understood the quality and nature of Judge McKittrick's mind-set of bias against me.

7. I am a law school graduate, I am a candidate for the California bar, I have worked at various courthouses for many years.

8. I have confidence in the U.S. Constitution and the laws of the United States.

9. By depriving me of the ability to pursue this action, Judge McKittrick deprived me of the 1st Amendment right timely and properly to redress my grievances.

10. I believe Judge McKittrick's animosity towards me to be personal and not based on any tangible legal fact, rule or law.

11. I do not believe that any fair or impartial outcome will occur in this case so long as Judge McKittrick is presiding over the within series of cases.

12. On that basis, I ask Judge McKittrick to disqualify himself from all further participation in this action.

13. On these bases, I believe further proceedings before Judge McKittrick will be deleterious to my legal positions and will result in negative outcomes for me.

14. I do not believe that any fair hearing or fair outcome of this case will occur before Judge McKittrick.

16-bk-33185          Recusal Motion 5-23 -2018 – pg. 14

I declare under penalty of perjury, under the laws of the United States of America that the foregoing is true and correct. Signed at Irvine, CA.

Dated May 23, 2018 _____ Peter Szanto

Thereon, debtor would respectfully ask Judge McKittrick to disqualify himself from further participation in this action such that it may proceed to final judgments and discharge before an unbiased judicial officer.

Dated May 23, 2018 _____ Peter Szanto

# **PROOF OF SERVICE**

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the with action. My business address is PO Box 4614, Portland OR 97208. On the date indicated below, I personally served the within:

Motion

a. Internal Revenue Service, PO Box 7346, Philadelphia PA 19101
b. First Service Residential, 15241 Laguna Canyon Rd, Irvine CA 92618
c. JPMorgan Chase Bank, represented by:
                 Cara Richter  c/o Shapiro & Sutherland
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683

d. Bank of America, c/o McCarthy & Holthus
      920 SW 3rd Av., Portland OR 97204
e. Oregon Department of Revenue, 955 Center St., Salem OR 97301
f. Chapter 7 Trustee, Stephen P Arnot, POBox 1963, Lake Oswego OR 97035
      by e-mail to arnotlaw@sbcglobal.net
g. Susan Szanto 11 Shore Pine Newport Beach CA 92657

by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 5-23-2018 *Maquisha Reynolds* **Maquisha Reynolds**

16-bk-33185        Recusal Motion 5-23 -2018  – pg. 16

Below is an Order of the Court.

_____

PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>PETER SZANTO<br><br>              Debtor. | Bankruptcy Case<br>No. 16-33185-pcm7<br><br>ORDER DENYING MOTION FOR<br>DISQUALIFICATION OF HONORABLE<br>JUDGE PETER C. MCKITTRICK |

Debtor filed a Notice of Motion for Disqualification and Motion for Disqualification of Honorable Judge Peter C. McKittrick (the "Motion"). Doc. 479. The Motion was filed in the above-captioned main case and requested by debtor to be cross-docketed in all of the related adversary proceedings. To more expeditiously reach the merits of debtor's motion, the court accedes to debtor's request, assuming, without deciding, that debtor has standing to file this motion in all related adversary proceedings and without prejudice to any future ruling regarding debtor's standing in any particular adversary proceeding.

Debtor argues that he is entitled to the relief sought pursuant to

Page 1 - MOTION FOR DISQUALIFICATION OF HONORABLE JUDGE PETER C. MCKITTRICK

28 U.S.C. § 455 and 28 U.S.C. § 144.[1]  Motion, p. 4-5.  It is well established that 28 U.S.C. § 144 does not apply to bankruptcy judges.  In re Goodwin, 194 B.R. 214, 221 (9th Cir. BAP 1996).  Accordingly, I will treat the Motion as a motion to recuse pursuant to 28 U.S.C. § 455.

As an initial matter, debtor argues that this motion must be referred to the United States District Court on the grounds that this proceeding is not a core proceeding in which this court may enter a final order.  However, a motion to disqualify a judge must be decided by the judge whose impartiality is being questioned.  In re Bernard, 31 F.3d 842, 843 (9th Cir. 1994).  Moreover, the question of final entry of orders or judgment in this matter is not at issue because an order denying a motion to recuse is interlocutory.  In re Goodwin, 194 B.R. at 221 (collecting cases).

///
///
///
///
///

---

1   The latter statute provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

18 U.S.C. § 144 (emphasis added).  28 U.S.C. § 144 applies, by its express terms, to district court proceedings only, and therefore is not applicable here.

28 U.S.C. § 455 provides, as relevant here:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

28 U.S.C. § 455(a), (b).

The test for evaluating bias or prejudice under § 455 is an objective one, "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." In re Goodwin, 194 B.R. at 222. An allegation of lack of impartiality or bias or prejudice must be based on an "extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." In re Basham, 208 B.R. 926, 933 (9th Cir. BAP 1997), aff'd, In re Byrne, 924 F.2d 924 (9th Cir. 1998) (table).

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or prejudice motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

_Liteky v. United States_, 510 U.S. 540, 555 (1994) (emphasis in

2 original). Although the court should recuse itself if the circumstances

3 warrant, there is also the "duty not to recuse if the circumstances do

4 not warrant." _In re Wisdom_, 2014 WL 2175148 at *5 (Bankr. D. Idaho

5 2014), _aff'd_, 2015 WL 2371489 (D. Idaho 2015).

6 　　　In support of the Motion, debtor argues that I have "intense bias

7 and prejudice which are readily recognizable as such by any objective

8 observer." Motion, p. 3. He argues that my bias is evidenced by

9 misapplication of the law by "inflict[ing] a non-community property

10 analysis upon debtor so as to find him lacking," Motion, p. 6, and that

11 I inappropriately – and to pro se debtor's detriment - believe "that all

12 attorneys state only all of the truth all of the time," Motion, p. 7.

13 Debtor also takes issue with several of my decisions rendered in

14 Adversary Proceeding No. 16-3114-pcm, discussed below.

15 　　　Debtor's argument that my bias is evidenced by incorrect rulings,

16 including a purported ruling involving an analysis of community

17 property, is unpersuasive. As a general rule, if any of my rulings are

18 incorrect, the proper channel to challenge them is through appeal.

19 "[J]udicial rulings alone almost never constitute a valid basis for a

20 bias or partiality recusal motion." _Liteky v. United States_, 510 U.S.

21 at 555. An erroneous ruling is not bias; the court "may be wrong

22 without being prejudiced." _In re Goodwin_, 194 B.R. at 224. Moreover, I

23 have yet to rule on any community property issues raised in this case.

24 If required to do so, this court is capable of addressing any community

25 property issues that may arise.

26

Page 4 - MOTION FOR DISQUALIFICATION OF HONORABLE JUDGE PETER C.
MCKITTRICK

Debtor also argues that several of my rulings in Adversary Proceeding 16-3114-pcm evidence bias against him.  <u>See</u> Motion, p. 8-10. However, these rulings are equally subject to review on appeal.  In fact, debtor has appealed my ruling granting summary judgment on all of his affirmative claims.  I have reviewed the rulings cited by debtor and conclude that a reasonable person, with knowledge of all the pertinent facts, would not reasonably question my impartiality based on these rulings.

Debtor's second argument, that I operate under the belief "that all attorneys state only all of the truth all of the time," is not grounded in fact.  I have considered each matter on its merits whether presented by debtor or attorneys for other parties appearing in this case and the related adversary proceedings.  Each matter has been decided according to the dictates of the law and based on the evidence provided.

In support of his argument, debtor states that I failed to fully question the chapter 7 trustee regarding service of documents on debtor during a hearing held in the main case on May 16, 2018.  Motion, p. 7. After reviewing the filings and the audio recording of that hearing, I determine that I did not inappropriately rely on any representation from either party.  Moreover, I allotted debtor additional time to submit his evidentiary objections to the court.

Debtor points to the May 16 hearing as one example of my bias, but he failed to provide any additional examples for the court to review. Because this case has proceeded for nearly two years and has resulted in hundreds of docket entries and hours of hearings, I did not independently review the entire record.  The court does not have an

independent duty to conduct such a review.  I have routinely required all interested parties to submit written evidence in support of their positions and have made credibility findings as necessary based on the evidence before me.  I have decided each issue based on the law and the facts before me.  As noted above, such judicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion and do not do so in this instance.

For the above-stated reasons and in the interest of justice and good cause appearing therefor,

IT IS HEREBY ORDERED that the Motion is DENIED.

###

Cc:  Peter Szanto
     Stephen P. Arnot
     UST

US BANKRUPTCY COURT
DISTRICT OF OREGON

2018 JAN 11 AM 11: 26

LODGED _____ RECT'D _____

DOCKETED

# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

| | |
|---|---|
| **In Re Peter Szanto**<br><br>**Debtor** | **# 16 –bk-33185 pcm7**<br><br>**Debtor's Notice of Motion and 2nd Motion<br>to<br>Postpone 341 Meeting of Creditors**<br><br>Hon. Judge Peter C. McKittrick, presiding |

## 1. Plaintiff's Certification Relating to Pre-filing Conferral
## (Certification Pursuant to LBR 7007-1(a))

Debtor telephoned Chapter 7 Trustee, Mr. Steve Arnot, on 1-8-2018 at 9:11AM and 10:32AM to discuss the matters presented herein. The calls went to voice mail and debtor requested a return call, ASAP.

Debtor telephoned Chapter 7 Trustee's counsel, Mr. Blacklidge on 1-8-2018 at 9:14AM and 1 PM to discuss the matters presented herein. The calls went to voice mail and debtor requested a return call, ASAP.

16-bk-33185          Motion 1-10--2018 – pg. 1

Thereafter, neither Mr. Arnot nor Mr. Blacklidge made any effort to contact debtor.

As of the signing of the instant paper, debtor has received no further communication from either Mr. Arnot or Mr. Blacklidge.

Ms McClurg has sent debtor a prospective letter to the effect -- that for all time – irregardless of whatever relief debtor requests, she will oppose it.

Thus, pursuant to rule, debtor has sought conferral so as to resolve the situation, but has been unsuccessful in that regard.

I certify under penalty of perjury under the laws of the United States, that foregoing is true and correct. Signed at Irvine CA.

DATED 1-10-2018 _____/s/_____ Peter Szanto

## 2. **Introduction**

To the Honorable Court and the Chapter 7 Trustee, please take notice, comes now debtor seeking a second postponement of the 341 hearing currently scheduled for 1-16-2018.

As will be explained momentarily, there are numerous good causes for postponement.

The primary reason is debtor's psychological depression, anxiety and fear which have necessitated debtor obtaining containing psychiatric treatment as explained in [EXHIBITS A, B, C]. The need for medical treatment of the intense and painful psychological traumas engendered by the events herein are being reviewed for coverage by debtor's Medicare administrator.

Additional good cause is debtor's MOTION to REMOVE TRUSTEE ARNOT which is also being filed today. The 341 meeting should not go forward with the intense animosity which exists between debtor and Trustee Arnot.

The third good cause is that venue is no longer appropriate in this district. This fact arises for numerous reasons which will be addressed in debtor's Motion to Change Venue. Chief among these are inconvenience of the Oregon forum and the fact that non-parties' whose property Trustee Arnot has seized are currently preparing petitions for Bankruptcy relief in California's Central District.

The fourth good cause is that debtor's inability to pay for travel and lodging to Portland. Debtor, who resides in Southern California, 1000 miles from Portland, does not have the financial resources to travel to Oregon at the present time. As shown in [EXHIBIT D], the last ticket available for a flight to attend the 341 hearing from the airport most accessible to debtor is $1,754. [EXHIBIT E] shows accommodations at the Econo Lodge for the nights of the 341 hearing. Debtor investigated the posh Econo Lodge only because the Portland YMCA was fully booked for those nights.

### 3. <u>Essential Facts</u>

The trustee's control over debtor's assets has had an immensely negative and horrific impact on debtor's financial life. Even a Starbucks Latte is now beyond debtor's means. Hot meals are a luxury.

Debtor's psychological outlook has become desperate. Debtor has sought and obtained continuing psychiatric treatment as explained in [EXHIBITS A, B, C]. Debtor's mental state from the anguish of having more than a $1.4 Million Dollars of his property expropriated is devastating. Debtor simply does not know what to do next!!

Debtor is making MOTION to REMOVE TRUSTEE ARNOT, upon the basis that Arnot is not following the 11 USC § 704 rules, is failing to disclose his seizures of debtor's property and is forcing persons who have no involvement with this Bankruptcy into Bankruptcies of their own.

16-bk-33185            Motion 1-10--2018  – pg. 4

The 341 meeting should not go forward with the intense animosity which exists between debtor and Trustee Arnot.

The third good cause is that venue is no longer appropriate in this district. This fact arises for numerous reasons which will be addressed in debtor's Motion to Change Venue. Chief among these are inconvenience of the Oregon forum, debtor's continuing psychological treatment in California and the fact that non-parties' whose property Trustee Arnot has seized are currently preparing petitions for their own Bankruptcy relief in California's Central District.

The fourth good cause is, as previously, debtor's ability to pay for travel and lodging to Portland. Debtor. Debtor's lack of money to travel to Oregon at the present time has become critical. As shown in [EXHIBIT D], the last ticket available for a flight to attend the 341 hearing from the airport most accessible to debtor is $1,754. [EXHIBIT E] is accommodations at the Econo Lodge for the nights of the 341 hearing. Debtor investigated the stylish Econo Lodge only because the Portland YMCA was fully booked.

### 3. Memorandum

Debtor is asking to extend the time of the 341 meeting. Presently, the hearing date is the 16th of January. Debtor asks an extension until after the Motions for Trustee Removal and Change of Venue are decided.

16-bk-33185        Motion 1-10--2018 – pg. 5

FRBP Rule 9006(b)(1) is the rule which allows for enlargement and extension of time and provides (no local alters this rule):

*"In general.* **Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order."**

This application is being sent for mailing on 1-10-2018, six days before the date of the hearing and so the only requirement for relief is good cause.

The first good cause as stated is the psychological trauma through which debtor is suffering with the seizure of all of his money and property. [EXHIBITS A, B, C] explain debtor's current psychological condition. Debtor is fearful to be away from his physiatrist's guidance and assistance even for a short time.

Additional good cause is that debtor seeks to remove Trustee Arnot from further participation in this Bankruptcy. Debtor suggests to the Court that any 341 meeting at the present time would be counter-productive, because of the intense animosity between Arnot and Szanto.

The third good cause is that venue is no longer proper in this district, because of inconvenience and extreme expense to destitute debtor of traveling to Portland.

Additionally, non-parties whose money and property have been seized by Mr. Arnot, under the false and improper pre-text of using the instant Bankruptcy to expropriate whatever property Arnot is able to get his hands on, are intending to seek Bankruptcy relief in California. Those destitute debtors will be indispensable parties in debtor Szanto's Bankruptcy, but consideration need be made for their travel and lodging expenses.

The fourth good cause is the continuing inability of debtor to afford travel to, and lodging in, Portland [EXHIBITS D, E].

Here, the various good causes demonstrate that postponing the 341 meeting would be advisable. Postponement will use less of debtor's limited resources and also provide to assure debtor's continued good health as well as allow the new Trustee to understand the dynamics herein.

## 4. Declaration of Peter Szanto

1. My name is Peter Szanto, I am the debtor herein.

2. This is my truthful declaration regarding postponement of the 341 hearing.

3. My psychological outlook at the present time is grim and becoming progressively worse. [EXHIBITS A, B, C]

4. The Trustee's seizure of approximately $1.4 million of my money and property has caused me to become destitute and nearly psychotic with worry and stress about my very bleak future.

5. I am frightened with worry and fear that I will never get my money back and that my debts will never be discharged.

6. The fear, stress and anxiety of the events of this Bankruptcy have created intense psychological pain for me as I attempt to determine my limited courses of action.

7. Mr. Arnot and I have talked numerous times and I believe to an absolute certainty that his goals are neither to assist with discharge of my debts nor offer guidance with any other aspect of Bankruptcy relief.

8.  I am receiving increasingly intense personal attacks from Susan
    Szanto, because she holds me personally responsible for the fact
    that Mr. Arnot has seized her property without notice and without
    any ability for her to attend a hearing before a judicial officer to
    stop such expropriation.

9.  It is Mr. Arnot's unnoticed and cavalier approach knowingly to
    seize Susan Szanto's property which has convinced me that
    Mr. Arnot should be removed as Trustee.

10.   Additionally, I am shocked that Mr. Arnot has demanded that
      non-parties Susan Szanto and Jakkob Szanto appear before him
      in Portland with proof of ownership of all of their own property.

11.   Based on the fact that Mr. Arnot has unilaterally made Susan
      Szanto and Jakkob Szanto indispensable parties in this case,
      the Bankruptcy petitions Susan and Jakkob intend to file will be
      in the Central California District. It would be appropriate and
      conserve judicial resources to hear all three cases there.

12.   Previously the Court's comment that debtor should be able to
      do better than $2325 for round trip airfare to Portland.

13.   Debtor his used all of his skill and knowledge and found a
      cheaper fare [EXHIBIT D].

16-bk-33185          Motion 1-10--2018 – pg. 9

14.     As for lodging, rooms at the YMCA were booked solid for the
        nights of 1-15-18 and 1-16-18.

15.     The most modest accommodations I was able to locate in
        close proximity to the Courthouse were at the Econo Lodge
        [EXHIBIT E].

16.     At the present time, I am in desperate need of legal
        assistance, but I do not have funds to hire counsel.

17.     This case has gotten beyond my ability to understand what
        the goals of this Bankruptcy are and I am desperately attempting
        to develop a strategy for dealing with liquidation.

18.     Thereon, I pray postponement of the 341 hearing until the
        resolution of the various matters enumerated *supra*.


    I declare under penalty of perjury under the laws of the United
States that the foregoing is true and correct. Signed at Irvine CA.

    Dated 1-10/2018    **/s/**_____ Peter Szanto

## 5. Conclusion

The treatment which debtor is receiving for his psychological injuries do not permit for attendance at the 341 meeting at the present time. Other factors also demonstrate very good cause for postponement.

Debtor would pray that a short postponement be granted.

Respectfully,

Dated 1-10/2018 _____ Peter Szanto

# PROOF OF SERVICE

     **My name is Maquisha Reynolds, I am over 21 years of age and not a party to the with action. My business address is PO Box 4614, Portland OR 97208. On the date indicated below, I personally served the within:**

   MOTION

a. Internal Revenue Service, PO Box 7346, Philadelphia PA 19101
b. First Service Residential, 15241 Laguna Canyon Rd, Irvine CA 92618
c. JPMorgan Chase Bank, represented by:
                    Cara Richter  c/o Shapiro & Sutherland
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683

d. Bank of America, c/o McCarthy & Holthus
    920 SW 3rd Av., Portland OR 97204
e. Oregon Department of Revenue, 955 Center St., Salem OR 97301
f. Chapter 7 Trustee, Stephen P Arnot, POBox 1963, Lake Oswego OR 97035
       by e-mail to arnotlaw@sbcglobal.net

     **by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.**

     **I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.**

     **Dated 1-10-2018** *Maquisha Reynolds* **Maquisha Reynolds**

16-bk-33185      Motion 1-10--2018 – pg. 12



GORDON G. GLOBUS, M.D.
Professor Emeritus
University of California

ATTENTION
BANKRUPTCY COURT PORTLAND OREGON

I am a board certified psychiatrist and have conducted a psychiatric examination of Peter Szanto who has consulted me for symptoms of anxiety, panic, depression and suicidal preoccupation. In effect there has been a total psychological breakdown of a previously high functioning individual. He is currently facing a Chapter Seven liquidation which has precipitated this symptomatology to the point that he is a definite suicidal risk.

A psychodynamic understanding of Mr. Szanto is crucial to evaluating his current emotional breakdown. This is a man who has been a successful independent businessman and in control of his life. He is a family man who has spent his entire life providing for the benefit of others. He now faces a situation for which he is psychologically ill-prepared: loss of control, which is exacerbated by being in court far from home. In this distant court he is also deprived of the usual circumstances in which he feels comfortable and secure. He is desperately in need of treatment, in particular psychotherapy several times per week, to provide understanding and grounding at this time of existential crisis. I have accordingly referred him to a senior psychoanalyst in Newport Beach, Dr. Elena Bezzubova, for emergency treatment.

In my medical opinion it is essential that there be a change in venue to a local court so that he can feel more emotionally secure in familiar surroundings and with available support systems, as well as participate in frequent treatment sessions.

Gordon Globus, M.D.              Newport Beach, CA  1/8/2018
Gordon Globus, M.D.
Professor Emeritus of Psychiatry and Philosophy
University of California Irvine

Distinguished Life Fellow, American Psychiatric Association



360 San Miguel Dr., Suite 503
Newport Beach, CA 92660
(949) 759-9515 office  (949) (888) 474-5034 fax  ggglobus@uci.edu

**GORDON GLOBUS M.D. PSYCHIATRY**

Home

Clinical Practice

Expert Witness

**Curriculum Vitae**

General Information

## GENERAL INFORMATION

EDUCATION: BA. Cornell University (1955, with high honors in psychology). MD. Tufts University (1959, Alpha Omega Alpha Honorary Society). Internship, Veterans Administration Center, Los Angeles (1960). Residency, McLean Hospital Division of Harvard Medical School (1961). Residency, Boston University Medical Center (1962, Chief Resident 1963). Research Fellow, Boston University School of Medicine (1964-65). Candidate, Boston Psychoanalytic Institute (1962-66).

POSITIONS: Assistant Prof., Boston University School of Medicine (1966). Senior Surgeon, U.S.Public Health Service (1967-68). Chief, Biological Clinical Research Section, Extramural, National Institute of Mental Health (1968). Professor, University of California Irvine (1968-1993). Chief, Psychosomatic and Consultation Service, Orange Co. Medical Center (1969-76). Founder and Director, UCI Psychotherapy Clinic (1976-80). Founder and Director, University Service at Capistrano by the Sea Hospital (1980-88). Vice-Chair for Capistrano by the Sea (1988-91). Co-Attending, Emergency Admitting Unit, UCI Medical Center (1992-93). Visiting professorships in Brazil, Denmark and Russia (1995-98).

AWARDS: Distinguished Life Fellow, American Psychiatric Association.

CERTIFICATIONS: American Board of Psychiatry and Neurology (in psychiatry), 1967.

PUBLICATIONS: Four solo books, two edited books and over ninety articles. (A complete list is available on request.)



### GORDON G. GLOBUS

Professor Emeritus, Psychiatry & Human Behavior
School of Medicine

M.D.

Phone: (949) 497-6251
Fax: None listed
Email: ggglobus@uci.edu

University of California, Irvine
Bldg 53 - Rt 81
101 The City Drive
Mail Code: 1680
Orange, CA 92668

| | |
|---|---|
| **Research Interests** | Research in cognitive science, neural networks and dreams. |
| **Publications** | Globus GG; Arpaia JP. Psychiatry and the new dynamics. Biological Psychiatry, 1994 Mar 1, 35(5):352-64. |
| **Link to this profile** | http://www.faculty.uci.edu/profile.cfm?faculty_id=2838 |
| **Last updated** | 04/22/2002 |

A campus service provided by:



 Email FPS Support

 Read UCI News

UCI Operator 949.824.5011

Journalists Media Inquiry

University of California, Irvine
Office of Research
5171 California, Suite 150
Irvine, CA 92697



© 2015 The Regents of the University of California     Privacy & Legal Notice



Case 16-33185-pcm7    Doc 339    Filed 01/11/18



# Review trip itinerary

**Reminder:**
Be sure to purchase your tickets with your eligible MileagePlus Credit Card to save on checked bags for you and one companion.

**TOTAL**      $1,754.51

### Trip summary

**Mon, Jan 15, 2018**

5:00 pm — Orange County, CA US (SNA)
12:44 am — Portland, OR US (PDX)

**Wed, Jan 17, 2018**

1:15 pm — Portland, OR US (PDX)
8:52 pm — Orange County, CA US (SNA)

Continue

Case 16-33185-pcm7    Doc 339    Filed 01/11/18

HOME (/) › OREGON (/OREGON) › PORTLAND (/OREGON/PORTLAND/HOTELS...
‹ VIEW PROPERTY DETAILS
(/OREGON/PORTLAND/ECONO-LODGE-
HOTELS/OR149)
‹ BACK TO SEARCH RESULTS
(/OREGON/PORTLAND/HOTELS)

# SELECT A ROOM

**ECONO LODGE CITY CENTER
(/OREGON/PORTLAND/ECONO-LODGE-
HOTELS/OR149)**

1889 SW 4th Avenue, Portland, OR, 97201, US

| CHECK-IN | CHECK-OUT |
|---|---|
| **Mon, 01/15/2018** | **Wed, 01/17/2018** |

| ROOMS | ADULTS | CHILDREN | SELECT SPECIAL RATE | |
|---|---|---|---|---|
| 1 | 1 | 0 | Best Available ▾ | UPDATE |

SELECT CURRENCY ⌄  |  CHOICE PRIVILEGES POINTS ()

**PAY AT CHECK-IN**
FREE CANCELLATION
FROM
~~$90~~ **$88**

## PAY AT CHECK-IN FROM  **$88**
Flexible rate available to all travelers worldwide

AVERAGE NIGHTLY RATE



### 1 QUEEN BED

**NO SMOKING**
Microwave and
Refrigerator, Coffee
Maker, Iron and
Ironing Board, Table
and Chairs, HBO
**+ MORE**

3 ROOMS LEFT

ⓘ MEMBER PRICE

~~$90~~ **$88**

BOOK ROOM ()

**NON-MEMBER PRICE**

**$90**

BOOK ROOM ()



### 1 KING BED

**NO SMOKING**
Microwave and
Refrigerator, Coffee
Maker, Iron and
Ironing Board, Table
and Chairs, HBO
**+ MORE**

1 ROOM LEFT

ⓘ MEMBER PRICE

~~$100~~ **$98**

BOOK ROOM ()

**NON-MEMBER PRICE**

**$100**

BOOK ROOM ()



### 2 QUEEN BEDS

**NO SMOKING**
Free WiFi

ⓘ MEMBER PRICE

~~$100~~ **$98**

BOOK ROOM ()

**NON-MEMBER PRICE**

**$100**

BOOK ROOM ()

*E*





Express ®

ORIGIN ID:DTHA    (949) 887-2369
SZANTO
SZANTO
P.O.BOX 14894

IRVINE, CA 92623
UNITED STATES US

SHIP DATE: 10JAN18
ACTWGT: 0.50 LB
CAD: 1654958/INET3920

BILL SENDER

TO  CLERK-DIST OREGON
    US BANKRUPTCY COURT PORTLAND
    1001 SW 5TH AVE #700
    ROOM 700 @ 1001 SW 5TH AV
    PORTLAND OR 97204
    (503) 610-0865            REF:
    INV:
    PO:                DEPT:

549JI8DX0I04C



FedEx
Express

E

**THU - 11 JAN 3:00P**
**STANDARD OVERNIGHT**

TRK#  7711 8968 2613
0201

97204
**WS MRIA**    OR-US  **PDX**



RT 537    6    C

16:00    2613
01.11

FZ

Extremely Urgent

FedEx Ship Manager – Print Your Label(s)

1/10/2018